[No. 9799. Department One. May 24, 1912.]

ROTHCHILD BROTHERS, *Respondent*, v. NORTHERN PACIFIC RAILWAY COMPANY, *Appellant*.[1]

CARRIERS—OF GOODS—DELIVERY—LOSS OF GOODS—FIRE. Where a car load of spirits, received with one of the containers in a broken condition, was spotted on the railway company's delivery tracks, the bill of lading surrendered, and notice given of the broken condition of the contents, and the consignee's agent reached the car with teams, broke the seal and entered the car, whereupon it almost immediately broke into flames and was consumed, there was an actual delivery and acceptance of the car before the fire.

SAME—PROXIMATE CAUSE OF LOSS—WAIVER. In such a case, the right to insist upon a delivery in safe condition is waived by the consignee by attempting to remove the goods in their unsafe condition after notice thereof; and the railway company is not liable for its loss, regardless of its negligence in forwarding the goods in a dangerous condition or in failing to remedy the defect on receipt of the car, as such negligence cannot be the proximate cause of the loss.

SAME—DELIVERY OF GOODS—AGENT OF CONSIGNEE. A transfer company, appointed by a consignee to receive its property from a railway company, is the agent of the consignee, and notice to it of the dangerous condition of goods is notice to the consignee.

[1]Reported in 123 Pac. 1011.

Cross-appeals from a judgment of the superior court for King county, Main, J., entered January 21, 1911, upon findings allowing the plaintiff the released value of merchandise shipped over the defendant's railway and destroyed by fire, after a trial to the court. Reversed on defendant's appeal.

*C. H. Winders*, for appellant.

*Preston & Thorgrimson*, for respondent.

FULLERTON, J.—The plaintiff, Rothchild Brothers, a corporation, brought this action against the defendant, the Northern Pacific Railway Company, to recover the value of a carload of high proof spirits which were shipped by distillers at Peoria, Illinois, to the plaintiff, at Portland, Oregon, and destroyed at the last named place by fire on June 27, 1907. Judgment went for the plaintiff in the court below, for the value of the spirits at the rate of fifty cents per proof gallon, being the value to which they were released, as the court found, in the contract of shipment. In its complaint, the plaintiff claimed the full market value of the spirits, namely $1.28 per proof gallon, plus the cost of transportation from the distillery to the place of delivery. Both parties appeal from the judgment entered; the plaintiff from the refusal of the court to render a judgment in its favor for the full value of the property destroyed, and the defendant from the general judgment holding it liable for the destruction of the property.

The facts material to be considered in determining the controversy are, in the main, undisputed. The spirits were billed by the distillery company to Portland, Oregon, and routed over the Chicago, Rock Island & Pacific Railway Company. They were carried by the last named company to Minneapolis, Minnesota, in one of its own cars. As the company did not allow its cars to be sent west of Minneapolis, it became necessary to transfer the spirits to another railway whose cars did run west of that point, and the car was turned

over to the Minnesota Transfer Company to make the transfer. This company transferred the property to a car of the defendant. While doing so, it discovered that one of the barrels in which the spirits were contained was in bad order; that a stave had broken leaving an opening in the barrel out of which something more than one-half of the original contents of the barrel had escaped. The barrel was loaded into the car in its broken condition, the car delivered to the defendant company and transported by it to its destination at Portland, Oregon. The car reached Portland sometime in the day of June 24, 1907. On that day or the next, it was entered and inspected by an agent of the defendant, who discovered, if the company did not then already know, the broken condition of the barrel. After looking over the contents of the car and noting the condition in which the spirits had arrived, he caused the car to be resealed without taking any steps to recooper the broken barrel or otherwise make more secure its contents.

The plaintiff had employed the Holman Transfer Company to receive the spirits from the railway company and haul them to its warehouse, and had delivered to the transfer company the bill of lading representing the property. As was his custom, a representative of the transfer company called at the railroad yard on the morning of the 25th of June to ascertain what freight had arrived, and was told of the arrival of the car load of spirits, and told further that the car would be spotted on the team or delivery tracks ready for unloading by the next morning. The agent of the transfer company then produced and delivered up the original bill of lading representing the shipment which his company had received from the plaintiff. On the next morning, June 26th, the representative of the transfer company again appeared and was told that the car had been spotted the night before and was ready to be unloaded. He then stated that he would send his teams for the spirits on the next morning. Either on this morning, or the day before, he was told of the broken

condition of the barrel, and of the fact that some of its contents had escaped. On the morning of June 27, the transfer company sent teams in charge of three of its men to receive the contents of the car and haul them to the plaintiff's warehouse; it also informed the man put in charge of the work of the broken condition of the barrel. The men with the teams reached the car at about the hour of 7 o'clock in the morning. The seal on the door was immediately broken, and one of the men entered the car, and another got as far as the door, when the spirits in the broken barrel burst into flame. The flame soon communicated itself to the other barrels, and the entire car load was consumed.

The trial judge, among other findings of fact, made the following:

"That within a proper and reasonable time after the arrival of the car at Portland, Oregon, the defendant gave notice of its arrival to the transfer company at Portland, which transfer company was employed as an independent contractor by the plaintiff to haul all goods shipped by rail to the plaintiff at Portland, Oregon, from the railroad tracks to plaintiff's place of business in Portland, Oregon. Thereafter, within a proper and reasonable time, said Portland Transfer Company sent its men and teams to the railroad yards for the purpose of loading onto their wagons and hauling to plaintiff's place of business the contents of said car. Those men entered the car for that purpose, and almost immediately following such entry the contents of the car burst into flames and were entirely destroyed by fire. Such spirits were well known to be and were in fact highly inflammable. The court is unable to determine what was the immediate cause for the spirits breaking into flame. The contents of the car and the inside of the car were in fact then in a highly inflammable condition owing to the broken condition of said barrel of spirits, both from fumes and from spilled contents of the broken barrel. The proximate cause of the happening was the negligence of the defendant in transporting over its line and bringing to Portland the car in its then dangerous condition. The testimony in the case upon the subject of the immediate cause of the fire the court finds is not credible."

A large space in the briefs of counsel has been given up to a discussion of the liability of the defendant for the failure of the Minnesota Transfer Company to recooper the broken barrel of spirits prior to sending it forward on the defendant's line, it being ·conceded that it was an act of negligence to fail to do so. But it has seemed to us that, under the facts shown, this is not a very material question. No harm resulted from the act except perhaps the loss of a small quantity of the spirits from the broken barrel by evaporation while on the way from Minneapolis to Portland, for which no claim is made in this proceeding. If it were necessary to recooper the barrel of spirits before delivery in order to avoid liability for their destruction by fire, the defendant had that opportunity after the property reached its destination and prior to the time they were so destroyed, and the defendant's liability to the plaintiff must be the same whether it was or was not liable for the negligent act of the Minnesota concern.

Neither have we found it necessary to follow counsel in their discussion as to the nature of the liability of the defendant for the spirits after they reached the Portland yards—that is to say, whether it was liable as a carrier or as warehouseman, as it has seemed to us that this also is an immaterial question. As we view the facts, there was an actual delivery of the property to the consignee immediately preceding its destruction, and that the defendant's liability to the appellant at that time was neither that of a carrier nor warehouseman. Not only had the bill of lading been surrendered and the car been spotted on the defendant's delivery tracks for delivery before the fire occurred, but the plaintiff's agents had actually reached the car with teams, had broken the seal of the car, and had opened and entered it for the purpose of removing the property. This clearly constitutes a delivery. There was not only a surrender of the right of possession of the property by the defendant, but there was an actual surrender of the property itself by the

defendant and an actual taking of the property by the plaintiff. Delivery could have been no more complete had the wagons been actually loaded and started on their way to the plaintiff's warehouse. *Kenny Co. v. Atlanta & W. P. R. Co.*, 122 Ga. 365, 50 S. E. 132; *Whitney Mfg. Co. v. Richmond & D. R. Co.*, 38 S. C. 365, 17 S. E. 147, 37 Am. St. 767; *Anchor Mill Co. v. Burlington, C. R. & N. R. Co.*, 102 Iowa 262, 71 N. W. 255; *Vaughan v. New York, N. H. & H. R. Co.*, 27 R. I. 235, 61 Atl. 695.

It follows from the foregoing considerations that the act found by the court to be the proximate cause of the loss of the property was not in fact its proximate cause. Undoubtedly the carriage of the spirits from Minneapolis to its destination at Portland with one of its containers in a broken condition was an event in the sequence of events that led up to the loss of the property, but it was no more the proximate cause of the loss than was the shipment of the original carrier from the place of manufacture to Minneapolis, or perhaps, any other act committed in reference to the property prior to its loss. If any act of the defendant could be said to be the proximate cause of the loss of the property, it was the act of tendering and delivering the property to the plaintiff in an unsafe and dangerous condition. This unquestionably would have been negligence if it had been done without notice to the plaintiff of such condition, and the fire had occurred for want of care induced by lack of knowledge of its condition. But such was not the case. As we have said, not only was the agent of the plaintiff made aware of the broken condition of the barrel prior to the time the property was tendered for delivery, but the immediate servants of the agent sent to receive the property were also made aware of its condition prior to being so sent. Undoubtedly the plaintiff could, without liability on its part, have refused to receive the property until the broken barrel was properly repaired or the property otherwise made safe for handling. But when it consented to receive it after being made aware of its

unsafe condition, it waived its right to insist upon a delivery
in proper condition, and took upon itself the risk of loss of
the property arising from the act of removing it in its un-
safe condition.  Since, therefore, the property was burned
while in the possession of the plaintiff through no fault of
the defendant other than the fault that the plaintiff con-
sented to waive, the loss of the property must be borne by
the plaintiff.

It can be gathered from the finding of fact which we have
quoted that the trial court thought that the fire causing the
loss of the spirits was of spontaneous origin, or originated
from the sudden bringing of the escaping fumes into con-
tact with the air; but if this be the meaning of the finding,
it has no support in the record.  It was shown by the evi-
dence, if indeed the fact be not generally known, that the
fumes or vapors arising from an open barrel of high proof
spirits, although highly inflammable, will not burn unless
they are brought into contact with fire in some form; that
contact with the air alone tends to dissipate and render them
innocuous rather than cause them to burst into flame.  More-
over, the plaintiff was warned of the condition of the spirits
and was bound to handle them with care in consonance with
such condition; and if it exposed them in such manner as to
cause them to burn, the fault is its, not the defendant's.
Since we find that there was a delivery of the property prior
to its burning, it is not necessary that we inquire into the
immediate origin of the fire.  But a very satisfactory ex-
planation of its origin is contained in the record, showing
that it originated from perfectly natural causes.

The court found that the Holman Transfer Company,
whom the plaintiff appointed to receive the property, was an
independent contractor, and it is argued that, because of this
fact, the relation of principal and agent did not obtain be-
tween the plaintiff and the transfer company, and hence no-
tice to the transfer company of the broken condition of the
barrel was not notice to the plaintiff.  But we cannot accept

this doctrine. It may be that the transfer company was so far an independent contractor that its acts of negligence resulting injuriously to third persons, even though while in the immediate work of making the transfer of the property, would not give such third persons a right of action against the plaintiff; but as between the plaintiff and the defendant, the transfer company was clearly the plaintiff's agent with reference to receiving the property from the defendant, and consequently notice to it was notice to the plaintiff.

This view of the questions presented requires a different judgment from that entered in the court below. The order will be, therefore, that the judgment appealed from be reversed, and the cause remanded to the court below with instructions to enter a judgment in favor of the defendant to the effect that the plaintiff take nothing by its action.

DUNBAR, C. J., MOUNT, PARKER, and GOSE, JJ., concur.