ARKANSAS MIDLAND RAILROAD COMPANY *v.* PREMIER

COTTON MILLS.

Opinion delivered June 23, 1913.

1.   CARRIERS—DELIVERY OF GOODS—CUSTOM AND USAGE.—The custom of a carrier as to delivery based on a well established usage at the place of delivery becomes a part of the contract between a carrier and the shipper, and governs as to the place, time and mode of making the delivery of goods shipped. (Page 222.)

2. . CARRIERS—DELIVERY OF GOODS—CUSTOM AND USAGE.—Where cotton
was consigned to plaintiff, and the cars containing the same had
arrived at their destination, it will he held that the cotton was
not delivered to plaintiff, when it was not actually delivered ac-
cording to the custom existing between the parties at the place of
delivery.  (Page 222.)

   Appeal from Phillips Circuit Court; *Hance N. Hut-
ton,* Judge; affirmed.

STATEMENT BY THE COURT.

   Appellee sued appellants for the loss 'of a shipment
of cotton consigned to it at Barton, Ark., and which was
destroyed by fire while in the cars upon the sidetrack at
the station.   The proof showed that the cars which the
cotton was in at the time it was destroyed were on a
sidetrack adjoining the depot on the north side of the
main line of appellants' road at that place.   The plant
of appellee was situated on the south side of the main
track, and there was a private switch from the south side
of appellants' main line to appellee's plant.   This pri-
vate switch was maintained by appellants, and was used
exclusively for receiving and delivering carload ship-
ments of cotton and other supplies used by appellee.
The m nager of appellee's mill was the station agent of
the railroad company at Barton.   The same person was
also the assistant to the station agent and assistant to
the manager of the mill.   The bill of lading in question
in this, case was for ninety-four bales of cotton consigned
to appellee at Barton, and it contained the clause as
follows:

   "2.   Notice.—This contract is accomplished, and the
liabilities of the companies as common carriers there-
under terminates on the arrival of the cotton at the sta-
tion or depot of delivery, and it is understood and agreed
that the companies will be liable as warehousemen only
thereafter."

   Appellee had a shed back of its mill on the private
spur track.   It was the custom of the railroad company
to deliver carload shipments on the spur track at the
shed, and appellee would unload the shipment from the

cars into the shed. The private track was within the yard limits of the station. The conductor of appellant's local freight train had exclusive charge of the switching at this station. When the cars arrived at the station and were placed on the sidetrack, appellee's agent requested the conductor to spot the cars at the usual place next to the shed. The conductor several times promised to do this, but neglected to do it on account of the press of other duties. After the cars had been on the sidetrack for about nine days, the conductor was again requested to spot the cars, and promised to do so the next morning. Appellee needed cotton in its mill and unloaded part of it from the cars where they stood for immediate use. That night a fire occurred and the remaining cotton was destroyed by the fire. Appellee had already gotten out as much of the cotton as it needed for immediate use, and did not intend to unload any more of the cotton until the cars were spotted at the shed. Appellee's agent had paid the freight and signed a receipt for the cotton before the fire occurred, but the testimony shows that it was the custom of appellee to sign a receipt for shipments weekly and to pay the freight therefor whether the goods had been received or not. This was an established custom, and was acquiesced in by the railroad company. Forty-six bales of cotton, valued at $2,764.91, were destroyed by the fire, and the jury returned a verdict for appellee for that amount.

From the judgment rendered, appellants have duly prosecuted an appeal to this court.

*E. B. Kinsworthy, P. R. Andrews* and *W. G. Riddick,* for appellant.

1. Neither the express nor the implied obligations of a bill of lading can be varied by parol. Hutchinson on Carriers, (3 ed.) § § 167, 168; *Id.* 310; 93 Ark. 537; 128 Ala. 167; 4 L. R. A. 244; 119 Pa. St. 24; 72 N. Y. 615; 30 Ala. 608; 13 L. R. A. 262; 115 Mass. 536; 6 Cyc. 466; 36 O. St. 453; 31 Me. 228; 80 Ala. 5; 66 Tex. 292.

2. A carrier's liability as such terminates upon the arrival of the goods at the designated place of delivery,

allowing a reasonable time after notice of the arrival for the consignee to receive and take possession of the goods; and after the lapse of such reasonable time, the carrier is liable as a warehouseman only. 100 Ark. 37; 77 Ark. 482; 60 Ark. 375; 2 Hutchinson on Carriers, § 685, p. 765; *Id.* § 694, p. 774. As a warehouseman, a carrier is liable only for the results of its negligence, the burden of proving which is on the party alleging it. There would be no presumption of negligence arising from the destruction of the goods by fire or otherwise. 60 Ark. 375; 52 Ark. 26; 64 Ark. 115; 97 Ark. 287.

3. The evidence fails to establish the custom respecting the delivery of carload freight.

*Moore, Vineyard & Satterfield,* for appellant.

"The liability of the common carrier ceases with the delivery of the goods at the point of destination according to the direction of the shipper, or *according to the usage and custom of the delivery at such place of destination.*" 100 Ark. 37, 42; Hutchinson on Carriers, (3 ed.), § § 664, 710, 711; 6 Cyc. 465 "f;" 40 L. R. A. (N. S.) 73.

HART, J., (after stating the facts). It is contended by counsel for appellant that the bill of lading was the contract of shipment between the parties to this suit, and that parol evidence to show a custom of delivering the carload shipments at a designated place next to the sheds of appellee was incompetent because it tended to vary or contradict the written instrument. In the case of *Arkadelphia Milling Co. v. Smoker Mdse. Co.,* 100 Ark. 37, the court said:

"The liability of the common carrier ceases with delivery of the goods at the point of destination according to the directions of the shipper, or according to the usage and custom of the trade at such place of destination."

Barton was a small station on appellant's line of railroad. It had no warehouse in which to store freight. It had a small platform on which it delivered small lots of freight. Appellee was the principal shipper at that point, and appellants had built a private spur track run-

ning next to the sheds at the rear of appellee's mill, and this spur track was for the exclusive use of appellee. The testimony shows that it was the custom of appellant to deliver carload shipments to appellee by spotting the cars on this spur track next to appellee's shed. This was an established custom, recognized both by appellants and appellee. The place of unloading was within the limit of the station grounds at Barton, and the proof of these facts did not tend to vary or contradict the bill of lading, and was not, therefore, incompetent. A general custom of the business or a well established usage at the place of delivery becomes a part of the contract and governs as to the place, time and mode of making the delivery. Elliott on Railroads, (2 ed.), vol. 2, § 710.

It is next contended by counsel for appellants that they had delivered the cotton to appellee, and that they were no longer liable as carrier when the cotton was destroyed by fire. We can not agree with them in this contention. This case is not like the case of *Rothchild Brothers* v. *Northern Pacific Railway Co.*, 68 Wash. 527, 40 L. R. A. (N. S.) 773, 123 Pac. 1011. There, not only had the bill of lading been surrendered, but the car had been spotted on the delivery track before the fire occurred. Here the car had not been spotted at the place where appellee had requested the cotton to be delivered, but, on the contrary, appellants' agents had agreed to place it there on the next day according to the existing custom. Appellee had not received the cotton, but had gone into the car only for the purpose of taking out cotton for its immediate use, and it was understood that the remaining cotton should be spotted on the track next to its shed before it would be unloaded. This was in accordance with the established usage between the parties. There was also a definite and recognized custom between appellants and appellee that weekly payments of freight would be made and receipts given for the goods, whether they had arrived or not, and in conformity with this custom between appellants and appellee, the payment of freight was

made and the receipt for the cotton signed. Under these circumstances, it can not be said, that appellants had delivered the cotton to appellee, and that it had accepted it.

The case was submitted to the jury under proper instructions, and the judgment will be affirmed.