GEORGE P. MCENTIRE ET AL., APPELLEES, V. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, APPELLANT.*

FILED APRIL 3, 1915. No. 18057.

Carriers: SHIPMENT: LOSS BY FIRE: LIABILITY. When a railroad company has transported a car of freight to the point designated by the shipper, has notified the consignee of the arrival of the car, and given consignee permission to unload the same, and consignee has broken the seal thereon, and locked the door with its own lock, and retained the key, and later a fire occurs in the car and the goods therein are thereby destroyed, *held* that the railroad company is not liable, and it is error for the court to submit the question of liability, negligence being neither alleged nor shown, to the jury.

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, JUDGE. *Reversed and dismissed.*

*Paul E. Walker* and *Holmes & De Lacy*, for appellant.

*Stewart, Williams & Brown*, contra.

---

* On rehearing, judgment sustained. See opinion, p. 828, *post*.

MORRISSEY, C. J.

The plaintiffs, McEntire Brothers, doing business at Topeka, Kansas, brought this action in the district court for Lancaster County, Nebraska, against the defendant, as the initial carrier, for the loss of a car of furniture shipped by plaintiff from Topeka, Kansas, July 21, 1909, over defendant's line of railroad, and destroyed by fire while still in the car standing on a sidetrack of defendant's connecting line at Blackfoot, Idaho, July 30, 1909. Plaintiffs allege that the furniture was destroyed by fire while in the possession of the defendant as a common carrier, and attach to and make a part of their petition the shipping contract, which contains, among others, the following provisions:

"Sec. 1. The carrier or party in possession of any of the property herein described shall be liable for any loss thereof or damage thereto, except as hereinafter provided. No carrier or party in possession of any of the property herein described shall be liable for any loss thereof or damage thereto or delay caused by the act of God, the public enemy, quarantine, the authority of law, or the act or default of the shipper or owner, or for differences in the weights of grain, seed, or other commodities caused by natural shrinkage or discrepancies in elevator weights. For loss, damage, or delay caused by fire occurring after forty-eight hours (exclusive of legal holidays) after notice of the arrival of the property at destination or port of export (if intended for export) has been duly sent or given, the carrier's liability shall be that of warehouseman only. Except in case of negligence of the carrier or party in possession (and the burden to prove freedom from such negligence shall be on the carrier or party in possession), the carrier or party in possession shall not be liable for loss, damage, or delay occurring while the property is stopped and held in transit upon request of the shipper, owner, or party entitled to make such request, or resulting from a defect or vice in the property or from riots or strikes. When in accordance with general custom, on account of the nature of the property, or when at the request

of the shipper the property is transported in open cars, the carrier or party in possession (except in case of loss or damage by fire, in which case the liability shall be the same as though the property had been carried in closed cars) shall be liable only for negligence, and the burden to prove freedom from such negligence shall be on the carrier or party in possession."

"Sec. 5. Property not removed by the party entitled to receive it within forty-eight hours (exclusive of legal holidays) after notice of its arrival has been duly sent or given may be kept in car, depot, or place of delivery of the carrier, or warehouse, subject to a reasonable charge for storage and to carrier's responsibility as warehouseman, only, or may be, at the option of the carrier, removed to and stored in a public or licensed warehouse at the cost of the owner and there held at the owner's risk and without liability on the part of the carrier, and subject to a lien for all freight and other lawful charges, including a reasonable charge for storage. The carrier may make a reasonable charge for the detention of any vessel or car, or for the use of tracks after the car has been held forty-eight hours (exclusive of legal holidays), for loading or unloading, and may add such charge to all other charges hereunder and hold such property subject to a lien therefor. Nothing in this section shall be construed as lessening the time allowed by law or as setting aside any local rule affecting car service or storage."

The answer admits the receipt and destruction of the car, but alleges that the car had been delivered to the consignee and accepted by it while in good condition and before any damage by fire had occurred. A number of other allegations are contained in the answer, but in the view we take of the case they are not material to its determination. There was a trial to a jury, and a verdict and judgment in favor of the plaintiffs for $2,019.53, and defendant appeals.

In making up the car lot, goods belonging to two other parties were included in the shipment; but for the purpose of this case they may be treated as a single shipment

made by the plaintiffs. The goods were consigned to the Brown-Eldrege Furniture Company, a corporation, doing business at Blackfoot, Idaho. The car arrived safely at its destination in the forenoon of July 30, 1909. In the same train also arrived a car of iron bedsteads shipped by a different house to the Brown-Eldrege Furniture Company. Before the arrival of the cars the consignee had received a card from the agent of the railroad company giving notice that the cars were in transit and were about to arrive, and giving the numbers of the cars. Upon the arrival of the cars an agent of the railroad company called the furniture company on the telephone, and notified the secretary of the company that the cars had arrived. The secretary, however, testifies that he understood that only one car had arrived. He asked and received permission to unload the goods and pay the freight later. The car arrived in good order and was spotted on the team siding where convenient for unloading. This was the usual practice and method of delivering freight in car lots. About 1:30 that afternoon, Mr. Peck, a member of the Brown-Eldrege Furniture Company, in company with a drayman, went to the cars, broke the seal and opened the door a foot or eighteen inches on the car containing the Kansas shipment, and left the door standing open the remainder of the afternoon. They then broke the seal and opened the other car and proceeded to unload it. About 6 o'clock that evening Mr. Wilson, secretary of the furniture company, called the railroad office on the telephone and inquired for the agent. The agent being absent, he talked to the operator, and told him that they had broken the seal and opened the door by mistake, and asked him to seal it. The operator replied that "he didn't know anything about the seals." Mr. Wilson says: "I asked him if it would be all right to lock it? He said: 'Yes; go ahead and lock it up.'" The furniture company then purchased a padlock and sent one of its employees to close and lock the door. This employee closed and locked the door, and retained the key. Within an hour after the door was locked the car was discovered to be burning on the inside. No charge of

negligence is made against the carrier, and the origin of the fire is unknown. It is claimed that the consignee had not taken possession of the goods, and the trial court permitted a member of the firm to testify that they did not intend to accept the shipment until the president of the company, who was absent on the day of the arrival of the car, returned home. Under the court's instructions the jury were told to determine the intention of the consignee. This testimony was incompetent, and the question of intent ought not to have been submitted to the jury. The parties are bound by what they did, and after the loss occurred they cannot be permitted to come in and say they meant to do something different. Had they taken the goods to their warehouse and there the fire broke out and destroyed them, they would not be permitted to say that they were taken by mistake, or that they were to have been left in the car until the president of the company returned home.

Plaintiff insists that, under the shipping contract set out, an absolute liability rests on the carrier for 48 hours after notice of the arrival of the car, or until the consignee has taken actual physical possession of the property by removing it from the car, and that after the 48-hour period the liability of warehouseman exists. But we do not believe the contract susceptible of this construction. A more reasonable construction seems to be that property not removed by the consignee within 48 hours after notice of its arrival may be left in the car, subject to a reasonable charge for storage, and that the liability of the carrier shall be that of warehouseman only. Had the consignee in this case not opened the car or taken possession thereof, but had left it upon the side-track in the condition in which it was received, the carrier would be liable as carrier for the first 48 hours after consignee had notice of its arrival, and for any time it so remained after the expiration of the 48-hour period the carrier would be liable as a warehouseman. Under these conditions and circumstances, the property would be in the possession and under the control of the carrier. But when the consignee broke the lock, put

its own lock on the door, and kept the key, it thereby excluded the carrier from possession of the car, it took possession of the goods, and they were in its possession at the time of the destruction by the fire. The property was so bulky that it did not reasonably admit of an actual, physical transfer, but the carrier, by giving permission to unload, surrendered its control and dominion, there was nothing further for it to do, and the consignee, by breaking the seal and locking the door with its own lock, and retaining the key, assumed control and dominion, and the transfer and delivery was complete. *Rothchild Bros. v. Northern P. R. Co.*, 68 Wash. 527; *Kenny Co. v. Atlantic & W. P. R. Co.*, 122 Ga. 365; *Whitney Mfg. Co. v. Richmond & D. R. Co.*, 38 S. Car. 365, 37 Am. St. Rep. 767; *Kingman St. Louis Implement Co. v. Southern R. Co.*, 133 Mo. App. 317; *Vaughn v. New York, N. H. & H. R. Co.*, 27 R. I. 235. It was error for the trial court to refuse to direct a verdict for the defendant, and the cause is

REVERSED AND DISMISSED.

BARNES, FAWCETT and HAMER, JJ., not sitting.