(No. 12978.—Judgment affirmed.)

MARK OWEN & Co. Appellee, *vs.* THE MICHIGAN CENTRAL RAILROAD COMPANY, Appellant.

*Opinion filed December 17, 1919—Rehearing denied Feb. 5, 1920.*

1. RAILROADS—*bill of lading is construed most strongly against the carrier.* In construing a bill of lading, if there be any doubt as to the meaning of the language used it must be construed most strongly against the carrier, for the reason that it is prepared by the officers or agents of the carrier.

2. SAME—*when liability for loss is that of a carrier and not of a warehouseman.* Under a bill of lading providing that for loss occurring more than forty-eight hours after notice of arrival of the shipment has been given the carrier's liability shall be that of a warehouseman, only, and that property not removed within forty-eight hours after notice of arrival is given may be kept in the car or depot, subject to a reasonable charge for storage and to the carrier's responsibility as a warehouseman, only, the carrier is liable, as a carrier, for loss by theft from a car within such forty-eight hours, though the car had been delivered to the consignee and was being unloaded.

APPEAL from the First Branch Appellate Court for the First District;—heard in that court on appeal from the Municipal Court of Chicago; the Hon. LEO J. DOYLE, Judge, presiding.

WINSTON, STRAWN & SHAW, (SILAS H. STRAWN, and FRANK H. TOWNER, of counsel,) for appellant.

WILLIAM B. MOULTON, and Jos. A. BATES, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

Mark Owen & Co., appellee, brought this action of the fourth class in the municipal court of Chicago to recover of the appellant, the Michigan Central Railroad Company, $23.30, alleged to be the value of some baskets of grapes which were lost out of four car-load shipments from points in Michigan over appellant's line of railroad to appellee at Chicago. The cause was tried in the municipal court of Chicago without a jury, upon a written stipulation of facts. The municipal court found the issues in favor of the defendant in that court and the plaintiff appealed to the Appellate Court for the First District, and that court found the issues for plaintiff below and rendered judgment in its favor for $23.30 and costs. The Appellate Court granted a certificate of importance and an appeal to this court.

It was stipulated that exhibits designated by number were the original bills of lading issued by appellant covering the shipments of the four cars of grapes; that the cars were transported by the appellant from points of origin to Chicago, consigned to appellee; that they were placed on public delivery team tracks, notice thereof given to appellee, the seals on the cars broken and the shipments accepted by appellee before the loss complained of occurred. It was further stipulated that at the time appellee started to unload the cars each of them contained the number of baskets and pounds of grapes received by appellant for transportation.

Appellant contends that at the time the loss occurred the goods had been delivered to and accepted by appellee and the liability as a common carrier had ceased and determined. Appellee contends that in the absence of any contract it had a reasonable time after placement of the cars and notice to unload them, during which time appellant's liability as a carrier continued, and that at the time the loss sued for occurred, appellant's liability, by express contract, was that of a common carrier. If by a fair construction of the bill of lading, which was the contract between the parties, ap-

pellant was liable as a common carrier, it will be unnecessary to determine other questions raised. In construing the bills of lading, if there be any doubt arising from the language used, as to its meaning, it is to be construed most strongly against the appellant, because it was prepared by its officers or agents. (*Texas and Pacific Railway Co.* v. *Reiss,* 183 U. S. 621.) The grapes were an inter-State shipment under a standard bill of lading, the material parts of which are:

Sec. 1. "For loss, damage or delay caused by fire occurring after forty-eight hours, exclusive of legal holidays, after notice of the arrival of the property at destination, or at port of export if intended for export, has been duly sent or given, the carrier's liability shall be that of warehouseman only."

Sec. 5. "Property not removed by the party entitled to receive it, within forty-eight hours, exclusive of legal holidays, after notice of its arrival has been duly sent or given, may be kept in car, depot or place of delivery of the carrier, subject to a reasonable charge for storage and to carrier's responsibility as warehouseman, only, or may be, at the option of the carrier, removed to and stored in a public or licensed warehouse at the cost of the owner and there held at owner's risk and without liability on the part of the carrier, and subject to a lien for all freight and other lawful charges, including a reasonable charge for storage."

As the shipments were inter-State shipments, decisions of the Federal courts construing bills of lading would control (*Gamble-Robinson Co.* v. *Union Pacific Railroad Co.* 262 Ill. 400,) if there were any such decisions, but counsel say there are none.

The first section of the bill of lading, as we read and understand it, limits appellant's liability as a carrier to the period of forty-eight hours after notice "sent or given" of the arrival of the property at its destination. For loss occurring after forty-eight hours from the time of arrival and

notice the liability is that of warehouseman, only. Section 5 provides that "property not removed" within forty-eight hours after notice of its arrival may be kept in car, depot or place of delivery of the carrier, subject to a reasonable charge for storage and the carrier's liability as warehouseman, only, or, at the option of the carrier, it may be stored in a warehouse at the cost and risk of the owner, without liability on the part of the carrier, subject to a lien for freight and storage charges.

Appellant insists the bills of lading were designed to put a limit on its liability as a carrier in any event, but that such liability ended before the expiration of that time, where, as in this case, the cars were placed on the public delivery team track, and appellee, after being notified, broke the seals, accepted the shipments and began unloading the cars. That does not appear to us to be the most reasonable construction of the language of the bills of lading. Section 5 says as to property "not removed" within forty-eight hours after notice,—not property "not delivered" within that time,—it may be kept in car, depot or place of delivery, subject to a reasonable charge for storage and the carrier's responsibility as a warehouseman, only. It would seem if it had been contemplated that the liability as carrier was to cease under the facts here stipulated, which it is insisted constituted a delivery, the language of the bills of lading might easily have made that intention clear. The ordinary mind would understand, we think, from reading the bills of lading, that although the car may have been placed for unloading, opened and the work of unloading begun, the carrier's liability as such continued as to "property not removed" forty-eight hours, provided that was a reasonable time for unloading, and it is not disputed that forty-eight hours was a reasonable time for appellee to unload the cars. The municipal court held in a proposition of law that the cars were unloaded by appellee in a reasonable time, and that is not questioned by appellant.

The construction we have placed on the language of the bills of lading seems to us the reasonable one. The most that can be said is that their meaning is not clear. Certainly more is left to be implied or inferred if the construction contended for by appellant is given them than is required to construe them as we have done. The question of the construction of this form of bill of lading has been passed upon by three State courts. (*McEntire* v. *Chicago, Rock Island and Pacific Railroad Co.* 98 Neb. 92; *Gary Bros. & Gaffke Co.* v. *Chicago, Milwaukee and Puget Sound Railway Co.* 49 Mont. 524; *Rustad* v. *Great Northern Railway Co.* 122 Minn. 453.) The court in the *McEntire case* said of section 5 of the bill of lading, that the more reasonable construction was that property not removed within forty-eight hours after notice of its arrival might be left in the car subject to a reasonable charge for storage, and the liability of the carrier should be that of warehouseman, only; that if the consignee had not opened the car and taken possession but had left it on the side-track in the condition received, the carrier would be liable as such forty-eight hours after notice of its arrival and after that time as warehouseman. In that case the consignee put his own padlock on the car and kept the key in his possession. In the *Gary Bros. case* a car of potatoes froze within forty-eight hours after placement and notice. The court held the carrier liable as such under the bill of lading forty-eight hours, and that it could only be released from such liability during that time by the removal of the potatoes. The same construction was given the same form of bill of lading in the *Rustad case,* the court holding that under the contract the liability as carrier continued forty-eight hours, even if the law, in the absence of the contract, might have terminated it sooner.

We are of opinion the judgment of the Appellate Court was correct, and it is affirmed.    *Judgment affirmed.*