# SOUTHERN RY. CO. et al v. VARNELL et al.—
## 232 S. W. (2d) 406.

Eastern Section.    March 14, 1950.

Petition for Certiorari denied by Supreme Court, June 9, 1950.

Curry & Harris, of Chattanooga, for plaintiffs.

Whitaker, Hall & Haynes, of Chattanooga, for defendants.

HOWARD, J. Plaintiffs brought this action against the defendants to recover the value of a carload of roofing shipped to them from the Ruberoid Company, of Mobile, Alabama, under a Uniform Straight Bill of Lading, on April 22, 1947. This carload of roofing was destroyed by fire before daylight on the morning of April 29, 1947, after it had been placed for unloading on a track adjoining a building, a part of which plaintiffs leased and used for a warehouse.

Plaintiffs allege in the first count of their declaration that defendants contracted to transport and deliver the carload of roofing to them in Chattanooga; that while the shipment was still in the possession of defendants, as common carriers, it was completely destroyed by fire; that plaintiffs had no notice of the arrival of the shipment until several hours after the fire, and that plaintiffs filed written notice of their claim, which defendants refused to pay.

In the second count of the declaration, plaintiffs allege that defendants breached Section 1 (a) and (b) of the Uniform Bill of Lading, which provides in part as follows:

"Sec. 1(a) The carrier or party in possession of any of the property herein described shall be liable as at common law for any loss thereof or damage thereto, except as hereinafter provided.

"(b) . . . The carrier's liability shall be that of warehouseman, only, for loss, damage, or delay caused by fire occurring after the expiration of the free time allowed by tariffs lawfully on file (such free time to be computed as therein provided) after notice of the arrival of the property at destination or at the port of export (if intended for export) has been duly sent or given,

and after placement of the property for delivery at destination, or tender of delivery of the property to the party entitled to receive it, has been made. . . ."

Plaintiffs charge that the defendants breached the foregoing provisions (1) by failing to give them proper notice of arrival of the car; and (2) by not allowing them two days' free time from 7 A. M. April 29, 1947, in which to unload the car.

In addition to the plea of general issue, the defendants filed special pleas in which it was admitted that the Southern Railway Company, as initial carrier, transported the carload of roofing from Mobile to Birmingham Alabama, and that the Alabama Great Southern Railway Company transported the car from Birmingham to Chattanooga; that the shipment was handled as other shipments are customarily handled in interstate commerce.

In their special pleas the defendants allege that at the time the carload of roofing was destroyed the car was in the possession of plaintiffs and was standing on a track adjacent to their warehouse, at a point previously designated by them where they usually and customarily unloaded their cars; that the track "was other than a public delivery track or an industrial interchange track, and that the placing of said car in question on said siding adjacent to plaintiffs' warehouse constituted notification to plaintiffs within the provisions of Rule 4, Section C of Agent B. T. Jones' Freight Tariff No. 4—Y (the demurrage tariff) in effect on April 28, 1947 . . . ."

By replication the plaintiffs denied that the car was standing on their private track when the fire occurred. They aver that said track was owned by defendants and was used by them to deliver freight to all consignees occupying the warehouse, and as a graveyard for dilapi-

dated, worn-out boxcars. They denied that the placing of the car on the track in question, as averred in defendant's plea, amounted to delivery.

At the conclusion of the plaintiffs' proof as well as at the conclusion of all the proof, the defendants moved for a directed verdict. These motions were overruled, and the jury returned a verdict in favor of the plaintiffs for $2,153.06. Thereafter the trial judge denied the defendants' motion for a new trial, and they appealed and have assigned errors.

Plaintiffs are partners in the retail hardware business in the city of Chattanooga, where they own and operate two stores. They have been in the retail hardware business since 1905.

On April 28, 1947, a carload of roofing previously ordered by plaintiffs arrived in Chattanooga about 2:30 P. M., and was immediately placed by the employees of the defendant, Alabama Great Southern Railway Company, on a siding (track) adjacent to the building used by plaintiffs as a warehouse. On the following morning, April 29th, at about 4 o'clock, the car and its entire contents were completely destroyed by fire, origin unknown. Plaintiffs received no notice of the arrival of the shipment until April 30th, several hours after the fire. Subsequently, upon demand, plaintiffs paid the seller the full cost of the materials destroyed, which amounted to $1920.69.

It appears that Plaintiffs' warehouse was located in a building formerly used by the C. N. O. & T. P. Ry. Co. as a freight depot. This building was leased to Charlie Hood by said Railroad in 1936, and in 1937 Hood subleased 250 feet of the east end of the building to plaintiffs. The building was about 600 feet long and was of

wood construction. It extended eastwardly from Market Street, and was located between 13th and 14th Streets in downtown Chattanooga, about 3 blocks from one of plaintiffs' stores. There were three or more other tenants occupying parts of the building west of plaintiffs' warehouse. On the north side of the building adjacent to the siding on which cars were placed for unloading, there were doors to each of the respective warehouses. The cars were always placed by the carrier in front of these doors for unloading by the consignee. There was a platform on the south side of the building from which the merchandise was loaded onto trucks. No watchman was kept by plaintiffs at the warehouse, which had no facilities for lighting or heating. This building and its entire contents, as well as 40 or 50 freight cars belonging to the railroad were also destroyed in the fire.

On the morning of April 28th, the day prior to the fire, one of plaintiffs' employees, Henry Wooten, went to plaintiffs' warehouse for some merchandise. While there, since the car was expected, this employee unlocked the door of the warehouse and looked outside to see if the car had arrived. Between 3 and 4 o'clock in the afternoon he again visited the warehouse. On the second trip he did not check on the arrival of the car, which, in the meantime, had been placed on the siding in front of plaintiffs' warehouse. This employee testified that he was never given the number of a car before its arrival, and that he never broke the seal and started unloading the freight without first receiving instructions from one of the plaintiffs.

It was admitted by witnesses for the defendants that the bill of lading required that notice of arrival be sent to plaintiffs "after placement of the property for delivery

at designation"; and that the 48 hours called for in the bill of lading began to run from 7 A. M. April 29, 1947.

■ It is a well settled rule that this court will not disturb the verdict if there is any material evidence to support it; and in determining whether or not there is such evidence, the strongest legitimate view of the evidence together with every reasonable inference to be drawn therefrom will be taken as true.

■ According to defendants' proof, the plaintiffs had unloaded several carload shipments before receiving the arrival notice from the carrier. This the plaintiffs denied. One of the plaintiffs, Slater Varnell, testified that it was not customary for cars to be accepted and unloaded before receiving the arrival notice; that it was absolutely necessary for them to depend upon the notice, since no employee was kept regularly at the warehouse. This controverted question was settled by the verdict of the jury, and where there is any material evidence to support the verdict, this Court is bound thereby. Likewise, the controverted question of whether or not a custom or usage had been established dispensing with the sending of the arrival notice was settled by the verdict of the jury.

■ We think the correct rule is that where notice is provided for by contract, as in the present case, the provisions of the contract must be complied with, and the mere arrival of the shipment at destination without notice of arrival to the consignee is not a delivery. The rule is stated in 13 C. J. S., Carriers, Section 153, subsec. b, p. 153, 154, page 300, as follows:

"It is the general rule that the carrier's liability as such does not terminate nor its less stringent liability as warehouseman, commence until notice has been given to

the consignee of the arrival of the goods, and, . . . a reasonable time after such notice for removal of the goods has elapsed. The rule has been held to apply, although the consignee knew the probable date of shipment and the probable date of arrival, and it has been further held that consignees of freight, even though it is of perishable nature, are not bound to make inquiry at the office of the carrier therefor in the absence of notice of arrival, and that too, although they have reason to believe that the shipment is overdue.

\*    \*    \*    \*    \*    \*

"The duty of the carrier as to giving notice may be controlled by contract between the shipper and the carrier. Where notice is provided for by contract the requirements of the contract in this regard must be complied with, and it makes no difference whether or not notice is required by common law or by statute in the jurisdiction where the contract is made, and, on the other hand, there is a corresponding duty on the part of the consignee to put himself in a position to receive the notice." See also, 9 A. J. Sec. 543, p. 752; Rothchild Brothers v. Northern Pacific Ry Co., 68 Wash. 527, 123 P. 1011, 40 L. R. A., N. S., 773.

Another question for our consideration is whether the side track on which the car was spotted was a public delivery track or was the private track of plaintiffs. Defendants insist that the track being adjacent to plaintiffs' warehouse was other than a public delivery track or an industrial interchange track, and that the placing of the car in question on the siding constituted notification to plaintiffs under the provisions of Rule 4 Y, P. T. Jones, Agent, I. C. C. No. 3963, as follows:

"Section A. Except as otherwise provided in Sections B, C, or D of this Rule, notice of arrival shall be sent or given consignee or party entitled to receive same by this railroad's agent, in writing, or, in lieu thereof, as otherwise agreed to in writing by this railroad and consignee, within twenty-four hours after arrival of car and billing at destination, . . . .

\* \* \* \* \* \*

"Section C. Delivery of cars upon other than public delivery tracks or upon industrial interchange tracks (except as provided in Note in Rule 3, Section E, page 42), or written notice sent or given to consignee or party entitled to receive same, of readiness to so deliver, will constitute notification to consignee. (See Rule 5, Section A, Paragraph 1, page 44, and Rule 8, Section D, Paragraph 1 (b), page 44.)"

The foregoing presents a disputed question of fact which we think was settled by the verdict of the jury. Plaintiffs denied they had any control whatsoever over the siding, denied that it was included in their lease from Hood, the original tenant of the building, and denied that it was a private siding. Hood testified that he leased the building from the C. N. O. & T. P. Railway in 1936, and was a tenant from month to month, but that he did not have any right or control over any of the tracks; that in the event he was in the act of unloading a car and the railroad wanted to switch another car in front of the car being unloaded, he always stopped unloading long enough for the railroad to switch the cars.

Mr. C. R. Givens, defendants' freight agent, testified that the C. N. O. & T. P. Railway and the Alabama Great Southern Railway were separate corporations, but that both railroads were a part of the Southern Railway

System, and that his company did not ask permission of the C. N. O. & T. P. Railway to use the tracks in question, on which to spot freight cars consigned to tenants occupying the building. The evidence showed that the Alabama Great Southern Railway acted as delivering carrier for all cars consigned to tenants occupying the building from other railroads, and reserved the right to use the tracks for all necessary switching operations.

It appears that the tracks in question were used not only to deliver freight consigned to the tenants of the building, but that they were used as a graveyard for 40 or 50 old freight cars. Furthermore, two of defendants' witnesses testified that they worked for one of the defendants and lived in a camp car, which stood on the tracks near the building.

██ There was ample evidence from which the jury could find that the side track in question was not a private track. We do not think that a side track constituting a part of the carrier's system, although used in connection with the consignees' business, is a private track within the provisions of the Tariff Rule providing that the placement of a car thereon constituted sufficient notice to the consignees.

██ After the fire plaintiffs paid the seller in Mobile the value of the roofing material. This payment amounted to $1,920.69. They did not pay the plaintiffs' freight charges amounting to $242.37. In their declaration plaintiffs sued the defendants for the foregoing items, totaling $2,163.06. Defendants by way of set-off and cross-action sued plaintiffs for the freight charges. The jury returned verdicts for the plaintiffs for the amount sued for and for the defendants for the freight charges.

It is insisted here that the verdicts are inconsistent, and that both parties were not entitled to recover. As

we see it plaintiffs' judgment amounts to the actual value of the roofing material destroyed by the fire, after defendants' judgment is deducted therefrom. Admitting that the verdicts are inconsistent, there is no showing that the defendants were prejudiced thereby. Under Code Section 10622, no judgment shall be set aside or new trial granted by this court for any error in the trial of a case unless it affirmatively appears that the error complained of affected the results of the trial.

We have carefully read the entire record with special attention to the assignments of error, and for reasons indicated all assignments of error are overruled and the judgment below will be affirmed at defendants' costs.