[No. 34786. Department Two. November 12, 1959.]

FLOYD E. CHASE et al., *Appellants*, v. JAMES P. BEARD et al., *Respondents.*[1]

[1]Reported in 346 P. (2d) 315.

*Frederick B. Cohen* and *John E. Bowen*, for appellants.

*Bryan & Bryan*, for respondents.

FOSTER, J.—Chase and wife, plaintiffs below, appeal a judgment dismissing their action upon a verdict for respondents.

Respondents, defendants below, Beard and wife, bought the Cottage Cove motel in March, 1957, and thereafter rented units to both transient and permanent guests. Appellant Chase rented cabin No. 7 on May 27, 1957, by the week. He informed Mrs. Beard that he and his wife would stay at the motel until they bought and moved into their own home. He testified that at that time Mrs. Beard warned him that the outside porch was shaky. The cabin was furnished and supplied with linens. Maid service was provided originally when the plaintiff husband was the lone occupant, but this was discontinued on June 4, 1957, when Mrs. Chase arrived.

Mrs. Chase was not explicitly advised of the condition of the porch.

On June 16, 1957, Mrs. Chase was crossing the porch to empty some trash when a board gave way beneath her. She fell to the bottom of the steps and sustained injuries. Chases brought suit against Beards for negligence in maintaining the premises. The Beards denied negligence and alleged that Mrs. Chase was contributorily negligent.

Error is assigned (1) to the admission of witness Crawford's testimony as to the inspections of the porch prior to respondents' purchase, (2) to the instructions on the duty of care respondents owed to the Chases and the refusal of appellant's requested instructions in that regard, (3) to the instructions on contributory negligence and the refusal to charge that appellants were not contributorily negligent, (4) to the instructions concerning the effect of failure of either party to prove its case, and (5) to the refusal to instruct on the theory of *res ipsa loquitur*. Other assignments are devoid of merit.

Crawford, the real-estate broker, testified that he inspected the premises, and cabin No. 7 in particular, in November, 1956, and again in February, 1957. The latter inspection, a month before the Beards took over, was in respondents' presence. Crawford testified to the extent of his inspection and to his observation of the condition of the porch. Objection, made and overruled, was on the grounds of irrelevancy and immateriality, particularly in point of time.

█ Whether evidence is relevant is within the discretion of the trial court. There are no precise rules. Each case depends upon its own circumstances and the relation of such facts to the ultimate issue.

". . . All facts are admissible in evidence which afford reasonable inferences or throw any light upon the contested matter. Relevancy means the logical relation between proposed evidence and the fact to be established. . . ." *Keisel v. Bredick*, 192 Wash. 665, 74 P. (2d) 473.

█ All facts which support a reasonable inference on a contested matter and any circumstance whereby an alleged fact may be proved or disproved are relevant. *Page v. Spokane City Lines, Inc.*, 51 Wn. (2d) 308, 317 P. (2d) 1076;

*Bloomquist v. Buffelen Mfg. Co.,* 47 Wn. (2d) 828, 289 P. (2d) 1041.

▇ Crawford's testimony was that, on close inspection, he observed no indication of dry rot in the wood. It tended to prove the reasonableness both of respondents' inspection of the premises and of respondents' lack of knowledge of the defective condition of the porch board. As such, it was material to the issues in the case.

▇ Was it also relevant? That is, were the facts to which Crawford testified too remote to have probative value? This determination rests within the discretion of the trial court. *Slaton v. Chicago, Milwaukee & St. Paul R. Co.,* 97 Wash. 441, 166 Pac. 644. Although the witness' inspections of the premises were made before the acquisition by respondents, they were relevant to respondents' inspection and were close enough in point of time to lend probability to the reasonableness of respondents' lack of knowledge, as based upon the invisible nature of the board's defect.

The court properly determined materiality and did not abuse its discretion in determining the relevancy of this testimony. It had probative value and was properly admitted.

Appellant contends that the highest degree of care is owed by a motelkeeper to his guests, and that the court's instruction that the standard was one of reasonable care was error. The law is otherwise.

▇ The standard of care owed by a motelkeeper to a guest has been likened to that care owed by an innkeeper to a guest, and was set forth by this court in *Brown v. Scharff,* 42 Wn. (2d) 50, 253 P. (2d) 426, as follows:

"Plaintiff's . . . contention [is] that defendants failed to use reasonable care to maintain their premises in a reasonably safe condition. We will use this as the proper measure of defendants' duty to plaintiff in this case . . . ."

This view is concurred in by a leading treatise as follows:

" . . . Such a one [a hotelkeeper] has the duty of reasonable care to prepare, and keep reasonably safe, the rooms let to guests, whether by the day, week, or month.

. . . The same thing is true of a boardinghouse or a motor court. . . . " 2 Harper and James, Torts, 1506, 1515, § 27.16(3).[2]

The court correctly instructed that the respondents were required to keep their premises in a reasonably safe condition for the use of their guests, and were required to make reasonable inspection thereof.

The community property system is an important factor in dealing with contributory negligence. Any recovery for personal injuries to the wife is community property. *Hawkins v. Front Street Cable R. Co.*, 3 Wash. 592, 28 Pac. 1021. The husband is the manager of the community personal property. RCW 26.16.030. This is in the interest of the marital community, and the authority of the husband is complete as long as he acts on behalf of the community. *Hanley v. Most*, 9 Wn. (2d) 429, 115 P. (2d) 933. The statutory authority exists in the husband in his representative capacity for the community. He is in the nature of a managing agent. Thus, the husband is a community agent in the sense that his acts on the community's behalf are binding upon it. *Catlin v. Mills*, 140 Wash. 1, 247 Pac. 1013, 47 A. L. R. 545; *Schramm v. Steele*, 97 Wash. 309, 166 Pac. 634.

It follows unquestionably that the husband, in acting as community agent, binds the community.

Mr. Chase's act of renting the cabin was done on behalf of the marital community in his role as the community manager. The testimony in that regard is uncontested. His acts bind the community.

In fact, quite apart from the community property system, it may be found that Mr. Chase, in renting the cabin, was acting as his wife's agent. Certainly she gave him authority, at least impliedly, to obtain living accommodations

[2]Accord, *Bowling v. Lewis*, 261 F. (2d) 311; *Moore v. James*, 5 Utah (2d) 91, 297 P. (2d) 221; *Stowe v. Fritzie Hotels, Inc.*, 44 Cal. (2d) 416, 282 P. (2d) 890; *Alsup v. Saratoga Hotel, Inc.*, 71 Idaho 229, 229 P. (2d) 985; *Doherty v. Arcade Hotel*, 170 Ore. 374, 134 P. (2d) 118; *Crockett v. Troyk* (Tex. Civ. App.), 78 S. W. (2d) 1012; *Winer v. Walo, Inc.* (Fla.), 105 So. (2d) 376; *Walker v. Weymouth*, 154 Me. 138, 145 A. (2d) 90; 43 C. J. S. 1173, 1176, § 22(b) (1).

for both until a permanent home was acquired. This rental was well within such authority.

Notice to an agent when acting within the scope of the agency is notice to his principal. Knowledge by the agent of facts relating to the agency is deemed knowledge by the principal. *American Fidelity & Cas. Co. v. Backstrom,* 47 Wn. (2d) 77, 287 P. (2d) 124; *Miller v. United Pac. Cas. Ins. Co.,* 187 Wash. 629, 60 P. (2d) 714; *Staats v. Pioneer Ins. Ass'n,* 55 Wash. 51, 104 Pac. 185. Under this doctrine, an agent's knowledge of the condition of property is imputed to his principal. *Rothchild Brothers v. Northern Pac. R. Co.,* 68 Wash. 527, 123 Pac. 1011, 40 L. R. A. (N.S.) 773.

This general rule of agency applies when a husband is acting as agent for his wife. *B. F. Goodrich Co. v. Naples,* 121 F. Supp. 345; *Young v. Neill,* 190 Ore. 161, 220 P. (2d) 89; *Morgan v. Bruce,* 76 Ariz. 121, 259 P. (2d) 558; *Palo Alto Building Co. v. Jones,* 81 Cal. App. (2d) 725, 185 P. (2d) 25; 41 C. J. S. 552, § 74.

■ Thus, in the instant case, the court was correct in instructing that the notice to Mr. Chase concerning the condition of the porch was imputed to his wife.

■ The court was also correct in instructing on the issue of contributory negligence by Mrs. Chase. Since she was charged with the knowledge of the defect in the porch, there was a jury question as to whether she had conducted herself in a proper manner for her self-protection under the circumstances. The instructions in this regard were necessary and were correct.

Error is assigned to instruction No. 9, which is as follows:

"If, after considering the whole case, you find the evidence to be in balance, that is to say, you are not convinced that either the plaintiffs or the defendants have made out a case by a preponderance of the evidence, then your verdict shall be for the defendants."

The interpretation which was, perforce, placed upon the instruction is that, if plaintiffs have failed to prove their case, the verdict shall be for the defendants even if defendants have not proved their affirmative defense of contributory negligence. Such is a correct statement of law.

 This instruction is to be distinguished from the one adjudged prejudicial in *Dods v. Harrison*, 51 Wn. (2d) 446, 319 P. (2d) 558, which told the jury if it had difficulty in determining whose negligence caused the injury, if in fact anyone was negligent, they should then find for the defendants. That invited the jury to abdicate its judgment in the face of difficulty.[3] Here, however, the jury was instructed, albeit somewhat vaguely, that if plaintiff did not prove defendant was negligent, then plaintiff must fail even if defendant did not prove that plaintiff was contributorily negligent. *Dods v. Harrison, supra*, is, therefore, not controlling.

An instruction, although unclear, must be prejudicial to warrant reversal. There was no such prejudice here.

Error is assigned on refusal of the court to instruct on what is called the "doctrine" of *res ipsa loquitur*. We find no error in this respect. The "doctrine" is a misnomer for it is a mere rule of evidence (*Morner v. Union Pac. R. Co.*, 31 Wn. (2d) 282, 196 P. (2d) 744; *Penson v. Inland Empire Paper Co.*, 73 Wash. 338, 132 Pac. 39), and is not a rule of substantive law. *Pacific Coast R. Co. v. American Mail Line, Ltd.*, 25 Wn. (2d) 809, 172 P. (2d) 226. The Latin phrase has been a prolific topic of discussion by scholars of the law and by thousands of reported decisions. There is only one point of agreement, which is that the literature is replete with conflict, confusion and doubt. The English criticism is summarized by a modern English scholar, Mr. T. Ellis Lewis, of Trinity Hall, Cambridge University.[4]

---

[3] ". . . It was an invitation to find an easy way out of a possible dilemma. It deprived the plaintiff of the possibility of a new trial which would have been ordered if the jurors had been unable to reach an agreement. . . ." *Dods v. Harrison*, 51 Wn. (2d) 446, 450, 319 P. (2d) 558.

[4] "The maxim has been much criticised. Lord Dunedin said: 'Truly there is no such thing as . . . the principle of res ipsa loquitur'; Lord Shaw: 'If that phrase had not been in Latin, nobody would have called it a principle. . . . The expression need not be magnified into a legal rule. . . . The day for canonising Latin phrases has gone past.' It has been referred to as 'meaningless jargon. In every case where the phrase *res ipsa loquitur* has been glibly applied living witnesses have proved circumstances in which the defendant's liability

The eminent American scholar, Dean William L. Prosser, of the School of Jurisprudence, University of California, has urged that the matter be discarded entirely.[5]

One of the great modern English judges, Lord Shaw of Dunfermline, in his opinion in the House of Lords decision

is a reasonable inference. The plaintiff is as well off without the maxim, and it appears to create a distinction of principle between types of cases where none exists'. The words are hardly a proposition of law, though they refer to one. They are a figure of speech." 11 Cambridge L. Jour. 74, 77.

[5]"One type of circumstantial evidence, concerning which there has been much difference of opinion, is that which is given the name of res ipsa loquitur. The Latin phrase, which means nothing more than 'the thing speaks for itself,' is the offspring of a casual word of Baron Pollock during argument with counsel in a case in 1863 . . .

["In the year 1863 a barrel of flour rolled out of the window of an English warehouse and into the lives of all tort lawyers. It fell upon a passing pedestrian, who sued the owner of the warehouse for his injuries. At the trial a question arose as to the necessity of some affirmative proof of the defendant's negligence; and in the course of a brief colloquy with counsel, Baron Pollock made use of a familiar and homely phrase. He said, 'The thing speaks for itself.' Unfortunately, since he was a classical scholar in the best tradition of English judges, he said it in Latin.

["From that casual utterance, dignified and magnified by the cloak of the learned tongue, there has grown by a most extraordinary process the 'doctrine' of res ipsa loquitur. It is a thing of fearful and wonderful complexity and ramifications, and the problems of its application and effect have filled the courts of all our states with a multitude of decisions, baffling and perplexing alike to students, attorneys and judges. . . ." Prosser, 37 Cal. L. Rev. 183]

". . . In its inception the principle was nothing more than a reasonable conclusion, from the circumstances of an unusual accident, that it was probably the defendant's fault. It soon became involved, however, in cases of injuries to passengers at the hands of a carrier, with the older rule that the carrier had the burden of proving that it was not negligent. The two problems, one of the sufficiency of circumstantial evidence, the other of the burden of proof, became confused and intermingled; and from this fusion there developed an uncertain 'doctrine' of res ipsa loquitur, which has been the source of so much trouble to the courts that the use of the phrase itself has become a definite obstacle to any clear thought, and it might better be discarded entirely." Prosser on Torts, chapter 7, § 42, p. 199, 201.

The experience in other common-law countries is similar. For the Austrialian point of view, see 24 Australian L. Jour. 194.

See, also, *Vogreg v. Shepard Ambulance Service*, 47 Wn. (2d) 659, 662, 289 P. (2d) 350.

in *Ballard v. North British R. Co.* (1923), Session Cases (House of Lords) 43, 56, observed:

"As to the law, I see little or no real difference between us, or indeed in the Courts below, beyond some variety of expression as to the meaning of what is known as *res ipsa loquitur*. If that phrase had not been in Latin, nobody would have called it a principle. . . ."

 In cases in which the so-called "doctrine" is applicable, its primary purpose is to withstand the challenge of the defendant's motion for a nonsuit. It did so here. There was no necessity for any instruction. The supreme court of Georgia very clearly expressed this view in *Palmer Brick Co. v. Chenall*, 119 Ga. 837, 843, 47 S. E. 329, in the course of which the court said:

"Under our system, where every question of negligence is left for determination by the jury, even in cases where the maxim under consideration is applicable, the judge should not charge the jury that there would be an inference of negligence from a given state of facts, but should instruct them in clear and unequivocal terms that negligence must be proved, and it is for them to consider whether the manner of the occurrence and the attendant circumstances are of such a character that they would, in their judgment and discretion, be authorized to draw an inference that the occurrence could not have taken place if due diligence on the part of the master had been exercised. And they should also be instructed, that, while they are not required by the law to draw any inference of negligence from the matter, still it is within their province to determine whether the circumstances are such that such an inference might be properly drawn. . . ."

The confusion is such that the American Law Institute in its Restatement, Torts, did not undertake to discuss the subject. The so-called "doctrine" never gained root in Michigan.[6]

---

[6] ". . . and in view of the numerous determinations by the Supreme Court of Michigan that the doctrine of res ipsa loquitur is repudiated in that state, no sufficient reason appears for presenting that doctrine and its limitations to the jury. The Michigan Supreme Court has consistently and emphatically denied the existence of the rule. . . ." *Detroit Edison Co. v. Knowles*, 152 F. (2d) 422.

■ There was no error in refusing the requested instruction because (1) as set forth above, the "doctrine" requires no instruction, (2) all of the facts were before the jury (There was no room for an instruction on an inference from those facts.), and (3) the "doctrine" of *res ipsa loquitur* does not apply to the claimed condition of a stairway or a floor in a building.

Here the defective step in question was admitted in evidence. The cause of the breakage was fully disclosed. There was no room for an instruction on an inference of negligence.

■ In a discussion entitled "The Doctrine of Res Ipsa Loquitur in Washington" 13 Wash. L. Rev. 215, 223, Mr. Max Kaminoff states:

" . . . Once the actual cause of the injury is established beyond controversy, of course, whether by the plaintiff or by the defendant, no presumptions will be involved.
. . . "

and cites in support thereof *Barnes v. J. C. Penney Co.,* 190 Wash. 633, 70 P. (2d) 311; *Engdal v. Owl Drug Co.,* 183 Wash. 100, 48 P. (2d) 232; *Grant v. Libby, McNeill & Libby,* 160 Wash. 138, 295 Pac. 139; *Topping v. Great Northern R. Co.,* 87 Wash. 702, 151 Pac. 775; and *Kluska v. Yeomans,* 54 Wash. 465, 103 Pac. 819. The cited cases fully support the statement. To that list may be added *Anderson v. Harrison,* 4 Wn. (2d) 265, 103 P. (2d) 320; and *Anderson v. Northern Pac. R. Co.,* 88 Wash. 139, 152 Pac. 1001.

The House of Lords recently reached the same conclusion in *Bolton v. Stone,* 1951 App. Cas. 850, 859, in the course of which it is said:

" . . . where, as in the present case, all the facts are known, it cannot have any application. It is known exactly how the accident happened and it is unnecessary to ask whether this accident would have happened had there been no negligence; the only question is, do the facts or omissions which are known and which led up to the injury amount to negligence."[7]

---

[7]"The doctrine of *res ipsa loquitur* does not apply when the cause of the accident is known. 'The *res* can only speak so as to throw the inference of fault upon the defender in some cases where the act of the

In any event, it does not apply to a defective condition in the floor of a building. In *Riley v. Pacific Outfitting Co.*, 185 Wash. 497, 500, 55 P. (2d) 1058, Judge Main, for a unanimous court, held:

" . . . The doctrine of *res ipsa loquitur* does not apply to a claimed defective condition of a stairway or floor in a building. *Chilberg v. Standard Furniture Co.*, 63 Wash. 414, 115 Pac. 837, 34 L. R. A. (N.S.) 1079; *Engdal v. Owl Drug Co.*, 183 Wash. 100, 48 P. (2d) 232; *Garland v. Furst Store*, 93 N. J. L. 127, 107 Atl. 38, 5 A. L. R. 275."

The judgment is affirmed.

WEAVER, C. J., MALLERY, FINLEY, and ROSELLINI, JJ., concur.

---

January 13, 1960. Petition for rehearing denied.

---

defender is unexplained'. Again, 'if the facts are sufficiently known, the question ceases to be one where the facts speak for themselves, and the solution is to be found by determining whether, on the facts as established, negligence is to be inferred or not'. For example, if a pedestrian is struck on the head by a cricket ball, driven out of the field by a batsman in the course of a cricket match, the maxim has no application because all the facts of the occurrence are known and the court must decide whether those facts constitute negligence on the part of the defendant or not." Charlesworth on Negligence (3rd ed.), 42, 43, chapter 4, § 2(78).

" . . . First, it should be observed that when all the facts are known there is no room for the application of the maxim: in such a case the only question is whether an inference of negligence becomes practically certain or practically impossible. . . ." Citing "*Davis v. Bunn* (1936), 56 C. L. R. 246, 269; *Barkway v. South Wales Transport Co.* [1950] 1 All E. R. 392, 395; *Bolton v. Stone* [1951] A. C. 850, 859." Salmond on Torts (12th ed.), 430, 431, chapter 10, § 129.