[No. 28917.   Department One.   May 7, 1943.]

WADE LEE SHOCKLEY *et al., Respondents,* v. THE
TRAVELERS INSURANCE COMPANY, *Appellant.*[1]

[1]Reported in 137 P. (2d) 117.

*Snively & Bounds,* for appellant.

*Rigg, Brown & Halverson,* for respondents.

STEINERT, J.—Plaintiffs, husband and wife, brought suit upon two life insurance policies, seeking to recover the benefits provided for therein in case of the permanent, total disability of the insured husband. Upon a trial before the court without a jury, findings were made, upon which the court entered judgment for the plaintiffs. Defendant appealed.

In December, 1918, the appellant insurance company issued to respondent Wade Lee Shockley, who will hereinafter be referred to as though he were the sole respondent, a life insurance policy in the amount of ten thousand dollars, payable at his death to his wife, Sarah R. Shockley. The policy contained a provision which, so far as is material here, read as follows:

"After one full annual premium shall have been paid upon this contract and before a default in the payment of any subsequent premium, if the Insured shall furnish the Company with due proof that he has since such payment and before having attained the age of 60, become wholly disabled by bodily injuries or disease, and will be permanently, continuously and wholly

prevented thereby for life from engaging in any occupation or employment for wage or profit, the Company [will waive payment of future premiums and will pay the insured, during such disability, an amount equal to $10 for each $1000 of insurance stated therein]."

The policy described the insured as being thirty-five years of age and the application therefor gave his occupation as that of sheep grower.

In November, 1930, appellant issued to respondent a second life policy, in the amount of five thousand dollars, likewise payable at his death to his wife. That policy contained a provision virtually the same in effect, though slightly different in wording, as the one contained in the first policy with reference to permanent, total disability of the insured. The second policy described the insured as then being forty-seven years of age, but it did not state his occupation. The evidence, however, establishes that he was at that time a fruit grower.

Sometime in the latter part of 1931, respondent, after obtaining medical attention and diagnosis of his physical condition, made application to the appellant for the payment to him of permanent total disability benefits, under the terms of the two policies. Appellant approved the application on February 25, 1932, and thereafter made regular monthly disability payments to respondent until July 29, 1941. On the last mentioned date, however, appellant notified respondent that certain information which it had obtained, medical and otherwise, indicated that respondent's activities and state of health were inconsistent with the requirements of the total disability provisions contained in the policies, and that it would therefore immediately discontinue such payments. Appellant has paid nothing upon either policy since that time.

Respondent thereupon instituted this action to

recover judgment for the amount of unpaid monthly benefits due and to become due, and to obtain a decree adjudging respondent entitled to a waiver of premium payments.

Respondent's complaint is predicated upon the claim that in the fall of 1931 he became wholly disabled by reason of tuberculosis and that his condition has since prevented him, and will permanently, continuously, and wholly prevent him, from engaging in any occupation or employment for wage or profit. Appellant denied the claim generally and by an affirmative defense alleged that whatever may have been respondent's former condition due to tuberculosis as claimed, it had in any event been completely and entirely cured; that respondent is no longer afflicted with, suffering from, or disabled by tuberculosis; that he is capable of doing the ordinary and usual work of a man of his age; that he is able to pursue the calling in which he had been engaged during the years prior to 1931; and that, as a matter of fact, he has for the last several years performed manual labor of a strenuous nature without in any way affecting his health. These affirmative allegations were denied in respondent's reply. The action was tried upon the issue thus presented as to respondent's alleged permanent, total disability, and considerable evidence was produced with respect thereto.

At the conclusion of a lengthy trial, the trial court took the matter under advisement and thereafter rendered a memorandum opinion in which it analyzed the testimony of the various witnesses and from that analysis concluded: (1) that respondent had not established by a preponderance of the evidence that his condition is one of "active" tuberculosis, and that the court should find as a matter of fact that his condition is, rather, one of "arrested" tuberculosis; but (2) that,

nevertheless, respondent is permanently and totally disabled, within the meaning of the provisions of the policies, in that in his present condition he cannot successfully seek, gain, or hold employment as a sheep raiser, fruit grower, or in any other line of endeavor; that were respondent to engage in either of the two activities specifically named above, his physical condition would in all probability become aggravated and the tuberculosis in his system would again become active; and that the same result would in all probability follow if respondent should engage in any other occupation within the range of his normal capabilities.

In consonance with the reasoning and conclusions set forth at length in the memorandum opinion, the trial court made findings of fact, two of which are fundamental so far as this appeal is concerned, and furnish the basis upon which the contentions of the respective parties are advanced.

Finding of fact No. 7 reads:

"That thereafter [following the issuance of the second policy] and during the year 1931 in the Fall thereof the plaintiff [respondent] Wade Lee Shockley became wholly disabled from tuberculosis, which said condition has since and will permanently and continuously wholly prevent him from engaging in any occupation or employment for wage or profit, and that the plaintiff Wade Lee Shockley has been so wholly disabled since the 1st day of November, 1931."

Finding of fact No. 12 is as follows:

"That the present condition of Plaintiff [respondent] Wade Schockley is one of *arrested* tuberculosis." (Italics ours.)

Under its first assignment of error, appellant contends that the trial court erred in entering judgment contrary to, and inconsistent with, the memorandum opinion and findings of fact. Appellant's argument is

that since the trial court expressed the view in its memorandum opinion that respondent had not established his condition as being one of *active* tuberculosis, but merely one of *arrested* tuberculosis, and since the court thereafter specifically found, in finding of fact No. 12, that respondent's condition is one of "arrested tuberculosis," therefore respondent was not, at the time involved in this action, suffering from a tubercular disease.

This argument is the product of appellant's own conception of the meaning of the term "arrested tuberculosis" and of its interpretation of the testimony given by medical witnesses concerning the definition of that term. In other words, appellant assumes, or else concludes from the evidence, that the word "arrested," as applied to tuberculosis, means that the disease has completely healed. Appellant's position in that respect is summed up in the following statement in its brief:

"From the testimony of the experts referred to and quoted in our statement herein and as shown by the record, the condition of the assured Wade Lee Shockley, was one of arrested tuberculosis. The definition of 'arrested,' as shown by the experts, means that the same is healed. So, under the record and under the court's memorandum opinion and under the Findings of Fact made by the trial court, the plaintiff [respondent] was not, at the time of giving notice, or at the time of trial, suffering from tuberculosis."

The testimony of the several expert witnesses, taken in its entirety, however, does not warrant so dogmatic a statement. One of the physicians testifying for respondent defined the term "arrested," used in connection with tuberculosis, as meaning "quiescent for the time being." Another physician, a specialist, testified that he diagnosed respondent's condition as "fibroid tuberculosis" which, he stated, always carried with it a possibility, or even probability, of being reactivated

by undue exertion or any misfortune. Respondent's personal physician diagnosed the patient's condition as chronic pulmonary tuberculosis of the fibrotic type, and stated that such type of disease is active and progressive at all times, and that "arrested tuberculosis" did not "mean the absence of tuberculosis or that it is cured."

On the other hand, one of appellant's expert medical witnesses, a specialist in diseases of the chest, testified that by "arrested tuberculosis" is meant that there is an absence of symptoms of activity for a period of six months or longer, with the patient "up and around on considerable exercise, walking exercise." Appellant's other expert witness, who specialized in internal medicine, testified as follows:

"Q. . . . Isn't that what you intended to convey? That a man with an arrested case of tuberculosis is just as well as if he never had it at all? A. Providing it hasn't had any complications. In other words, if the thing has made a natural recovery, then we have to consider it as though he hadn't had it, providing there has not been a lot of destruction, of lung collapse, which we didn't have here. . . . Q. He's just as healthy as if that [fibrosis] was not present? A. As far as his tuberculosis is concerned, yes, sir."

After a full consideration of the medical testimony, together with all the other evidence concerning respondent's physical condition and activities, the trial court was of the expressed belief that although respondent's present condition is to be classed as one of "arrested tuberculosis," nevertheless his latent condition would be reactivated by a resumption of his former occupations, and that he "is presently as much incapacitated from the performance of hard labor as he would be if he actually did not have the physical strength to perform it."

■ In the light of the conflicting medical testi-

mony, finding of fact No. 12, defining respondent's condition as one of "arrested" tuberculosis, might, if standing alone, be said to be ambiguous. That conclusion, however, would call for the application of the general rule that, when the language of findings is equivocal and susceptible of a construction which will support the judgment, though also susceptible of another construction, the findings will be given that meaning which sustains the judgment, rather than one which would defeat it. *Dobrentai v. Piehl*, 92 Wash. 433, 159 Pac. 371; *Burleigh v. Consumers' Publishing Co.*, 95 Wash. 49, 163 Pac. 5; *Hendrix v. Hendrix*, 101 Wash. 535, 172 Pac. 819; *Evans v. Rublee*, 108 Wash. 174, 183 Pac. 83.

Since, under the evidence, the language of finding of fact No. 12 is susceptible of a construction which will support the judgment, we are required to adopt that construction. Aside from that consideration, however, it is apparent from the memorandum opinion itself that the trial court in making that finding did not use the term "arrested" in the sense that the disease had healed, but rather that the condition was such that the malady would be reactivated by the exertion required of respondent if he should engage in any occupation within the range of his normal capabilities. We therefore hold that appellant's first assignment of error is not well taken.

Appellant next alleges, and assigns as the principal error, that the trial court entered findings contrary to the evidence. This assignment has particular reference to finding of fact No. 7, set forth above, wherein the court stated that ever since 1931 respondent has been wholly disabled by reason of tuberculosis, and that such condition has permanently, continuously, and wholly prevented him, and will in the future so prevent

him, from engaging in any occupation or employment for wage or profit.

In considering this assignment we proceed upon the well-settled rule that, in a case tried to the court, its findings of fact will not be disturbed unless the evidence preponderates against them. *Tutewiler v. Shannon,* 8 Wn. (2d) 23, 111 P. (2d) 215; *Lee v. Debentures Inc.,* 8 Wn. (2d) 353, 112 P. (2d) 142; *Mathewson v. Carlson,* 13 Wn. (2d) 363, 125 P. (2d) 272; *Hardman v. Younkers,* 15 Wn. (2d) 483, 131 P. (2d) 177.

The evidence in this case is voluminous. We shall not attempt to review it in detail, but only to the extent necessary to demonstrate its general character and its bearing upon the issue here involved.

Respondent, who at the time of the trial was fifty-eight years of age, testified in substance as follows: He suffers intermittent pain in the vicinity of his upper right chest, extending from the right nipple to the collarbone. After retiring at night, he experiences great difficulty in getting to sleep and lies awake from one to three hours. He is compelled to walk very slowly, and when he attempts to move faster he becomes dizzy and at times has fallen down. He has done practically no physical work since 1931, and on the few occasions when he exerted himself he became exhausted in a very short time. He owns a cabin about forty miles from Yakima and spends a part of his time there, usually during the summer, but does not engage in strenuous labor. He often goes fishing in his motor boat on the lake, near his cabin, but this requires little effort on his part. Whenever he walks up the short trail which leads to his cabin, he is compelled to stop frequently because of shortness of breath. He has gone hunting with friends, or his son, a number of times during the past years, but on such occasions he rode most of the way and walked less than a mile, and

then only by easy stages with frequent periods of rest. He has had only two occupations in his lifetime, that of sheep raiser and that of fruit grower. These had been his occupations prior to 1931, and both entailed arduous labor throughout the year. His only schooling was acquired years ago in a log schoolhouse in the mountains of Virginia, where he attended about nine terms of from three to five months each.

Respondent's wife corroborated his testimony, stating that his health was not as good as it was in 1931; that he walks with difficulty; and that he is required by his condition to spend a great deal of time in bed.

Five lay witnesses, who have had ample opportunity over a course of years to observe the actions and habits of respondent, testified in more or less detail to the effect that he was incapacitated from putting forth any great physical exertion without becoming exhausted, and that he was unable even to walk rapidly.

A specialist in internal medicine testified that respondent's condition was that of "active" tuberculosis, that the condition is progressive, and that respondent was unable to be employed at any gainful occupation. He stated:

"I'd say this was just dynamite, to put this man back to do anything at all, and this thing would—anything, it would flare like wildfire."

Another physician, who had specialized in chest afflictions, testified that, while he could not say positively that respondent's condition is one of active tuberculosis, he could say that it is one of fibroid tuberculosis, and that the efforts of medical attention should be to preserve respondent's present strength and prevent a reactivation of the disease. He also stated:

"I wouldn't say that he is able to perform any kind of manual labor, except the light portion a person might have to do around the house, providing it didn't consist

of shovelling in a load of coal off of a dray, or things that were exceedingly rampageous."

Respondent's personal physician stated that he began attending respondent in 1932 and at that time diagnosed the case as one of chronic pulmonary tuberculosis, confirming the diagnosis of the patient's former physician. He further testified:

"Q. From that examination [made shortly before the trial], would you say that his condition has improved any since you first— A. No, I can't; I don't think his condition has improved, in this sense: that he still has this tuberculosis, he has more of this fibrotic condition of the lungs than he had when he first started out, and that is the history of this fibrotic type of chronic tuberculosis. . . . THE COURT: You say, Doctor, there are no active lesions there? THE WITNESS: No active, open lesions of tuberculosis so far as I know but this is a progressive condition just the same because there is increased fibrosis of the lungs."

Appellant, on the other hand, introduced the testimony of two physicians who are specialists in chest diseases and internal medicine, respectively. One of them examined respondent during the trial; the other had examined him a year prior to the trial and also latterly. Both of them had studied the X-ray picture taken of respondent's chest. Without detailing their testimony, we will say that they testified at length to the effect that respondent's condition was not one of active tuberculosis, but merely of arrested tuberculosis; that the disease had been walled off through the process of calcification and been healed; that there was nothing in respondent's present condition, so far as tuberculosis is concerned, that would prevent him from pursuing the usual course that a man of his age would ordinarily follow; and that respondent is in no way incapacitated from tuberculosis at the present time. Both of these

witnesses conceded, however, that there is a possibility of reactivating the disease by overexertion.

Appellant also introduced the testimony of an investigator who was an employee of a San Francisco detective agency. It appears that in the summer of 1941 appellant had procured this detective agency to investigate the activities of the respondent. The investigator and a co-worker went to Yakima in August, 1941, and during a period of one week followed him in his trips around the city and took note of his actions. They also engineered an automobile trip with respondent to the lake near his cabin. In the course of that trip, while respondent was temporarily absent from the automobile, one of the investigators unscrewed a valve core in one of the tires, causing it to go flat. Upon respondent's return, the investigator surreptitiously took a moving picture of him while changing the tire. The testimony of the investigator witness was to the effect that during that week respondent had walked rapidly, carried heavy boxes, and had changed the tire with alacrity, apparently suffering no discomfort or exhaustion. The moving picture was projected on a temporary screen in the court room during the trial.

Throughout the course of the trial the trial court had the benefit of observing the respondent and noting his physical appearance.

■ From the testimony as above set forth in substance, we think it manifest that no one could say that the evidence preponderates against the findings of the trial court, and a careful scrutiny of the entire record leads us definitely to the same conclusion.

■ Accepting the facts as the trial court was entitled to find them from the evidence, we turn to the law upon the subject. The general rule, supported by the great weight of authority, as to the meaning of

"total disability" is well stated in 29 Am. Jur. 872, Insurance, § 1161, as follows:

"The rule prevailing in most jurisdictions is that the 'total disability' contemplated by a sickness or accident insurance policy, or the disability clause of a life insurance policy, does not mean, as its literal construction would require, a state of absolute helplessness, but contemplates rather such a disability as renders the insured unable to perform all the substantial and material acts necessary to the prosecution of his business or occupation in a customary and usual manner. The fact that the insured is able to perform some inconsequential, trivial, or incidental duties connected with his usual employment or occupation does not preclude recovery under a total disability provision; neither does the fact that the insured may be able for an inappreciable period of time to perform his accustomed labor prevent a recovery, where he is actually totally disabled from following any avocation."

See, also, annotations and cases cited in 24 A. L. R. (1923) 203; 37 A. L. R. (1925) 151; 41 A. L. R. (1926) 1376; 51 A. L. R. (1927) 1048; 79 A. L. R. (1932) 857; and 98 A. L. R. (1935) 788.

It will be noted that the rule as thus enunciated defines "total disability" as one which prevents the insured from performing all the substantial and material acts necessary to the prosecution of the business or occupation in which the insured is customarily engaged, while the policies with which we are here more particularly concerned contain the added limitation that the insured must also have been prevented from "engaging in any occupation or employment for wage or profit." Thus, in the instant case, the insured must establish that he is prevented from engaging in any occupation or employment *for wage or profit,* regardless of what his former occupation or employment may have been.

The rule in this state with respect to policies containing such added limitations has been declared in *Storwick v. Reliance Life Ins. Co.,* 151 Wash. 153, 275 Pac. 550, and *Burke v. Metropolitan Life Ins. Co.,* 12 Wn. (2d) 162, 120 P. (2d) 841, and has also been recognized in *Kuhnle v. Department of Labor & Industries,* 12 Wn. (2d) 191, 120 P. (2d) 1003.

In the case of *Storwick v. Reliance Life Ins. Co., supra,* the company issued to Storwick a life insurance policy containing a provision for the payment of monthly benefits upon satisfactory proof that the insured

" . . . has become totally and permanently disabled for life by bodily injury or disease, and is thereby prevented from performing any and every kind of duty pertaining to his occupation *or any other occupation or gainful pursuit."* (Italics ours.)

Two other life insurance policies, subsequently issued to Storwick, contained language concededly of the same import. The company also issued to Storwick an accident policy insuring his life in the sum of three thousand dollars, and further insuring him against disability incurred while living. The language of that policy, in so far as we need here notice it, was as follows:

"If such injury shall not result in loss of life, but shall, from the date of the accident, render the insured *continuously unable to transact each and every part of his business duties,* the Company will pay for the period of such disability and such total loss of time, not to exceed 104 consecutive weeks, an indemnity per week of $25.

"After 104 weeks indemnity payments will continue so long as insured during life shall be *wholly and continuously disabled by such injury from engaging in any occupation or employment for wage or profit."* (Italics ours.)

Construing the above provisions, this court said:

"It seems to us that one is totally disabled, within the meaning of these policies, when he is so far disabled that he cannot, with any degree of success, *within the range of his normal capabilities,* earn wages or profit in some occupation or gainful pursuit." (Italics ours.)

That statement of the rule with respect to such provisions was quoted with approval in *Burke v. Metropolitan Life Ins. Co., supra.*

Total disability is necessarily a relative matter and must depend largely upon the peculiar circumstances of each case, particularly with respect to the occupation, employment, and capabilities of the assured. *Storwick v. Reliance Life Ins. Co., supra;* 29 Am. Jur. 874, Insurance, § 1161.

Respondent testified that his working experience had been confined to manual labor, that his education was very limited, and that the only occupations in which he had ever engaged were the two specifically mentioned above. Appellant makes some contention that respondent could supervise the work connected with his orchard and hire the manual labor to be performed by someone else.

In the case of *Kuhnle v. Department of Labor & Industries, supra,* the plaintiff sought recovery for injuries sustained by him while working for a logging company. It appears that he owned a farm upon which he and his family resided. After his injury, he was unable to do the things necessary to be done upon the place, but instructed his wife and children how to perform the necessary chores, and himself supervised their work; he also hired help. This court held that, although he was able to do some supervisory work around the farm, it was nevertheless a jury question as to whether he was totally and permanently dis-

abled within the meaning of the workmen's compensation act. In the course of the opinion, the court, after adverting to the rule as approved in the *Storwick* case, *supra,* said:

"It would seem that the words 'total disability,' or the equivalent thereof, should receive at least as liberal an interpretation when used in workmen's compensation acts as when used in insurance policies."

In its list of supplemental authorities appellant cites a number of Federal court cases holding that such courts take judicial notice of the fact that tuberculosis in its incipient stage is curable or may be arrested, and further holding that the burden is upon the plaintiff to prove the permanency of his total disability. Assuming the correctness of those pronouncements, we do not consider them of any controlling effect here, for, according to the testimony produced by respondent in the instant case, his tuberculosis, though arrested, has not been cured, and his present condition, so far as can now be determined, is one of total and permanent disability.

The judgment is affirmed.

SIMPSON, C. J., BLAKE, and JEFFERS, JJ., concur.

MALLERY, J. (dissenting)—A tubercular area in the lungs is said to be *calcified* by the healing process of nature, which walls off the affected part, thus sealing it from the rest of the body. Medical science then terms the tuberculosis as *arrested.* It does not use the term *cured,* because the lung never again becomes normal in the sense that it is in the same condition as before.

My first objection to the majority opinion is that it bases a static rule of law upon a moving scientific hypothesis. In this case, it is not necessary for science to

advance its frontiers to leave an anachronism in the law. It was error even at the time it was pronounced.

My second objection is that it ignores respondent's present condition. The respondent is not now permanently and totally disabled. His tuberculosis is arrested. No one can say whether it will ever become active again. If it does, he will become eligible for the benefits of his policy. That is one of the contingencies against which he is insured. It is the possibility of a thing happening that provides the motive for buying insurance. It is the happening of the event insured against that gives rise to the insurer's liability.

If the respondent has a contractual right to receive the benefits of his policy to be used for the purpose of preventing the happening of the event insured against, then all policies of this type will be matured upon a showing that the benefits can be spent in a way reasonably calculated to lessen the likelihood of the happening of such events.