[No. 33173. Department One. June 16, 1955.]

FLOYD LIMING, *Appellant,* v. CARL TEEL *et al., Respondents.*[1]

*A. J. Hutton,* for appellant.

*Merrill Wallace,* for respondents.

DONWORTH, J.—This case arose out of the sale of certain timber situated on a forty-acre tract of land in Kitsap county owned by plaintiff. The purchase price stated in the "timber deed and agreement" was three hundred fifty dollars, of

[1]Reported in 284 P. (2d) 1110.

which fifty dollars was paid at the time of its execution and the balance was payable "fifteen days from scaling date of logs." It was provided in the instrument that the timber was to be removed within fourteen months. The land is bisected by state highway No. 15, which crosses it in a generally east and west direction. For convenience, the two parts of the tract will be referred to as the north half and the south half.

The complaint contained three causes of action: first, for recovery of the balance of three hundred dollars due under the contract; second, for recovery of treble damages for timber alleged to have been wrongfully cut and removed from the north half of the property; and, third, for damages caused by defendants' improper methods in conducting their logging operation.

The answer admitted the existence of the contract, denied the other material allegations of the complaint, and by way of affirmative defense and cross-complaint alleged that, during the progress of the logging operation, plaintiff had informed defendant husband that he had not sold or intended to sell any timber on the north half of the property; that, before the logging operation was completed, plaintiff threatened bodily harm to defendant personally, and to his employees, and refused to renew the cutting permit, by reason of which defendant was prevented from completing his logging operation within the fourteen-month period. Defendants prayed that plaintiff be directed to execute a cutting permit and to grant them access to the land for the purpose of removing the remainder of the timber.

The reply denied the affirmative matter in defendants' answer, except that it was admitted that plaintiff had informed defendant husband during the course of the logging operation that he had not sold or intended to sell the timber north of the highway.

The case came to trial on November 20, 1953, before the court sitting without a jury. Regarding the execution of the timber deed and agreement, the evidence showed that the parties met at the land in question on the afternoon of Au-

gust 11, 1951. There is a dispute in the testimony whether they examined the timber on *both* sides of the highway. It is undisputed that they did spend some time inspecting the timber on the south half.

Defendant husband had with him a mimeographed form of timber deed and agreement. Immediately following their inspection of the timber, the parties drove to plaintiff's home, which was about two miles distant, where plaintiff obtained the legal description of the land which was inserted in the instrument. He then signed it, but the purchaser did not. The parties then drove to Poulsbo and later to Silverdale in search of a notary public. About dusk they found a notary, and plaintiff again signed the instrument before him and the usual notarial certificate was then attached.

On October 24, 1951, the parties signed an application addressed to the state supervisor of forestry for a timber cutting permit with reference to the entire forty acres. This permit was issued promptly and expired December 31, 1951, and defendant husband proceeded to cut and remove timber, first from the south half and then from the north half of the property, until about the first of January, 1952.

At the trial, after both parties to the contract (and plaintiff's expert witness) had testified, the case was closed and the court orally announced his decision in favor of plaintiff on the first and second causes of action, and in favor of defendants as to the third. The basis of the court's ruling was that it would be unconscionable to permit defendant to obtain twenty-five hundred dollars worth of timber for three hundred fifty dollars under the circumstances then shown by the evidence.

Thereafter, defendants filed a motion for new trial, and proposed findings and conclusions were submitted by each of the parties and rejected by the court.

On April 12, 1954, a motion to reopen the case was granted, and a further hearing was held on May 25, 1954, at which time plaintiff testified and defendants called as witnesses C. M. Teel, father of defendant husband, and two former employees who had worked on the logging operation. At

the close of this hearing, the court took the case under advisement.

On August 13, 1954, the court filed a memorandum opinion, which summarized the evidence as follows:

"This case resolves itself primarily into a question of whether or not a certain timber deed and agreement should be reformed so as to provide that the contract intended pertained only to that portion of the land described lying south of the county road. The court assumes from the position taken by the parties that the pleadings may be deemed amended insofar as necessary to conform to the proof and that the issues are as stated above.

"There is a direct conflict between the testimony of plaintiff and of defendant relative to the negotiations and transactions surrounding the execution of the contract. The contract signed August 11, 1951, the timber cutting permit of October 24, 1951, and also the Earnest Money Agreement of August 11, 1951, all describe the entire property.

"The plaintiff testified that only the southern portion was intended and that this was the only part viewed by the parties. The defendant on the other hand, testified that the entire tract was intended and that a considerable time was occupied in going over the property both north and south of the road.

"Plaintiff and defendant were the only two persons present at the time of the actual negotiations. The defendant's father, however, testified at the time of reopening of the case that while he did not overhear the entire conversation between the parties, he did observe them spend a considerable period of time going over both portions of the property involved.

"Much of the plaintiff's testimony was contradicted in other respects by additional witnesses produced by the defendant.

"The court previously announced that it was inclined to hold for the plaintiff because in view of the surrounding facts and circumstances, his position appeared to be the most reasonable and more susceptible of belief than that of the defendant. However, in view of all the testimony now before the court, I do not feel that this view can be adhered to further. . . .

"In the present case, although there is a great disparity between the consideration stated and the value of the timber sold, we cannot say more than that this is the only circum-

stance in support of the plaintiff's position. There is no showing of fraud or inequitable conduct on the part of the defendant.

"The only instruments in writing before the court all support the defendant's position and what corroborating testimony is available, further substantiates his contentions.

"Although it is rather difficult to believe that the plaintiff would knowingly make such a contract, he did do so and the court is without power to relieve him from a poor bargain. There is such a conflict in the evidence that it cannot be said that the plaintiff's case has been proved by clear, cogent, and convincing evidence.

"The plaintiff is entitled to judgment only for the $300 balance due in accordance with the contract."

Findings of fact, conclusions of law, and judgment for plaintiff for three hundred dollars and costs were thereafter entered in accordance with this memorandum opinion. Plaintiff's motion for new trial was heard and denied. This appeal was then prosecuted.

Appellant specifies seven assignments of error. In No. 5, he complains of five separate portions of the findings of fact.

We have read the testimony in the light of appellant's argument that these findings are erroneous, but we are unable to say that the evidence preponderates against them. The trial court at the last hearing decided that respondent's witnesses were the more worthy of belief. This was a matter which was particularly within the province of the trial court.

■■ It is argued that the trial court at the end of the trial should have accepted appellant's own testimony as more credible than respondents' because that was its conclusion at the end of the first hearing, and because of respondent husband's attitude on the witness stand. But, as we have many times held, a trial court may change its mind after delivering an oral or written opinion and before making its findings and conclusions. *Chandler v. Doran Co.*, 44 Wn. (2d) 396, 267 P. (2d) 907. Likewise, the trial court has the responsibility of deciding the relative credibility of the parties and their witnesses. *Kellogg v. Wilcox, ante* p. 558, 283 P. (2d) 677.

■ In this case, the trial court finally came to the conclusion that appellant had not sustained the burden of proof as to his second cause of action. It was incumbent upon appellant to show by clear, cogent, and convincing evidence that there was a mutual mistake made when the parties, in entering into the timber deed and agreement, described the property as including the whole forty acres instead of only that portion lying south of the highway. *Akers v. Sinclair*, 37 Wn. (2d) 693, 226 P. (2d) 225. The trial court did not err in holding that the second cause of action was not so proven.

The case of *Hirt v. Entus*, 37 Wn. (2d) 418, 224 P. (2d) 620, cited by appellant to sustain his claim for treble damages, does not have any application to our problem because appellant has not made out a case for reformation of the timber deed and agreement. Consequently, that instrument on its face gave respondent the right to cut timber from the north half of the property. Under these circumstances, he could not be held to be a willful trespasser.

■ Appellant also assigns error to the reopening of the case for the taking of further testimony. Since the record does not show any objection made by appellant in the trial court to the reopening of the case, this assignment cannot now be considered.

After considering all other assignments of error in the light of the evidence in the record, we cannot hold that the trial court committed any reversible error.

While appellant made a bad bargain in view of the total number of board feet of timber which he ultimately found to be on his property, there was no legal or equitable basis shown in this case to warrant granting him reformation or partial rescission of the contract.

As we understand the closing statement in respondents' brief, they are waiving any claim to any standing or down merchantable timber now on appellant's property. Consequently, appellant may deal with it as he sees fit.

The judgment of the trial court is in all respects affirmed.

HAMLEY, C. J., SCHWELLENBACH, FINLEY, and OTT, JJ., concur.