[No. 39253.    Department Two.    May 29, 1968.]

JOSEPH F. LADLEY, *Respondent*, v. SAINT PAUL FIRE & MARINE INSURANCE COMPANY, *Appellant.*\*

\*Reported in 442 P.2d 983.

*Davies, Pearson, Anderson & Pearson* and *Vernon R. Pearson,* for appellant.

*Paul B. Fournier* and *J. K. Hallam,* for respondent.

BRADFORD, J.†—December 26, 1963, Joseph F. Ladley, plaintiff (respondent) was in the process of putting chains on his automobile, when a pickup truck skidded into his car and knocked it off its jack. Plaintiff was struck in the back by the fender of his own automobile, but apparently was uninjured. Having completed the task for which he stopped, he drove to his home in Elma.

By the time of his arrival at his home, a bothersome soreness had developed in his back. The soreness continued and grew more intense until January 9, 1964, when plaintiff consulted a physician, who recommended hospitalization. Plaintiff spent 4 days in traction in the hospital. He remained away from his employment as postmaster in Elma until March 24, 1964, when he attempted to return to work in a limited capacity. Although much of plaintiff's responsibility was of a supervisory nature, he was required to engage in considerable bending, lifting, standing, and sitting at a desk.

July 17, 1964, feeling unable to continue his work, of some 20 years' duration, plaintiff terminated his employment, applied for, and was granted a government disability pension. He drew unemployment compensation during most of 1965. Plaintiff worked for 2 weeks in 1965 and 4 or 5 weeks in 1966 in a friend's hardware store, but even though the work was of a very light nature, and the hours were short, plaintiff testified the work caused him so much pain

---

†Judge Bradford is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

in his back that he was forced to discontinue the employment to seek medical assistance.

He then made his claim for total disability payments from the defendant (appellant), Saint Paul Fire & Marine Insurance Company. Defendant admitted that its policy was in effect on December 26, 1963, but denied that plaintiff qualified for total disability benefits thereunder, since he had not met the conditions giving rise to the benefits. The policy provision pertinent to the decision provides:

> Coverage C—Total Disability: To pay weekly indemnity at the rate stated in the schedule [$50.00] for the period of continuous total disability of the insured which shall result directly and independently of all other causes from bodily injury caused by accident and sustained by the insured while in or upon or while entering into or alighting from, or through being struck by, an automobile, provided (1) such disability shall commence within twenty days after the date of the accident, and (2) any disability during the period of fifty-two weeks from its commencement shall be deemed total disability only if it shall continuously prevent the insured from performing every duty pertaining to his occupation and (3) any disability after said fifty-two weeks shall be deemed total disability only if it shall continuously prevent the insured from engaging in any occupation or employment for wage or profit.

The case was tried to the court, and after making its findings of fact and conclusions of law, the trial court gave judgment to plaintiff in the amount of $50 per week from July 17, 1964, together with interest at the rate of 6 per cent per annum, to wit, $5,414.21, with costs.

Defendant assigns error in nine instances to the trial court's findings of fact and conclusions of law. The following questions are presented:

(1) Whether substantial evidence supported the trial court's findings that the plaintiff suffered a continuous total disability which prevented him from performing his duties as postmaster or any occupation for wage or profit.

(2) Whether plaintiff should be estopped to assert a claim of disability which is inconsistent with his sworn

statement made to the Department of Employment Security asserting his willingness and ability to work.

(3) Whether the trial court erred in admitting evidence of plaintiff's medical disability retirement and pension benefits.

■ What constitutes total disability within the meaning of an insurance policy comprehending benefits of one kind or another has been the subject of much litigation, but is now reasonably well settled in this and other jurisdictions. In *Storwick v. Reliance Life Ins. Co.*, 151 Wash. 153, 158, 275 Pac. 550 (1929), Judge Parker cited a large number of cases from various states which had adopted what was referred to as the liberal view of construction of unqualified, total disability clauses, and said:

> It seems to us that one is totally disabled, within the meaning of these policies, when he is so far disabled that he cannot, with any degree of success, within the range of his normal capabilities, earn wages or profit in some occupation or gainful pursuit.

We have consistently adhered to this rule of construction. *McKillips v. Railway Mail Ass'n*, 10 Wn.2d 122, 116 P.2d 330 (1941); *Burke v. Metropolitan Life Ins. Co.*, 12 Wn.2d 162, 120 P.2d 841 (1942); *Shockley v. Travelers Ins. Co.*, 17 Wn.2d 736, 137 P.2d 117 (1943); *Kuhnle v. Mutual Life Ins. Co. of New York*, 20 Wn.2d 255, 147 P.2d 281 (1944); *Tucker v. Bankers Life & Cas. Co.*, 67 Wn.2d 60, 406 P.2d 628 (1965).

■ In *Storwick v. Reliance Life Ins. Co., supra,* we said at 162:

> Now, adopting, as we do, the liberal view of the meaning of the total disability clauses of these policies, in harmony with the above noticed decisions, though conceding that there are some holding to the contrary, we inquire, Was the evidence of Storwick's disability such as to warrant the jury concluding that he was totally disabled within the meaning of these policies?

In the instant case, our inquiry is limited to whether the findings of the trial court are supported by substantial, albeit disputed and conflicting, evidence in the record.

*Tucker v. Bankers Life & Cas. Co., supra; Jones v. National Bank of Commerce,* 66 Wn.2d 341, 402 P.2d 673 (1965); *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959). We have examined the record and are satisfied there is substantial evidence to support the findings of the trial court to the effect that the plaintiff suffered a continuous total disability which prevented him from performing his duties as postmaster or any occupation for wages or profit. The medical evidence, although not compelling, was sufficient, if believed, to establish plaintiff's total disability as a result of the back injury. The other evidence, although conflicting, was substantial.

Defendant relies on *Kuhnle v. Mutual Life Ins. Co. of New York, supra,* to support his contention that the plaintiff should be estopped from asserting his claim against the defendant, since the certification which he was required to make to the Department of Employment Security was totally inconsistent with the claim of total permanent disability which he now asserts. That case is not apposite to the case at bar because, there, the plaintiff, insured, took a position inconsistent with his position at trial, not only by his application for a driver's license, but also by his engagement in several profitable and extremely strenuous forms of employment, including occasionally driving a logging truck over rugged logging roads for 10 to 12 hours per day and for distances of some 150 miles per day. The court did not hold that an inconsistent statement made under oath in an application for a driver's license would act as an estoppel.

In the instant case, the statements made to procure unemployment compensation were to some extent inconsistent with plaintiff's present position, but the trial court considered and weighed the conflicting evidence, including the medical testimony, the testimony of the plaintiff, and the evidence of his activities. The record reveals that plaintiff did not intend to apply for unemployment compensation until some friends suggested he qualified. Upon checking with officials, he was advised that he qualified for benefits, notwithstanding his disabilities, which he revealed.

There is evidence in the record substantiating the fact that the plaintiff was subjected to pain and discomfort, necessitating medical attention each time he made the slightest effort to work. Defendant relies on the evidence of plaintiff's recreational activities, including hunting, fishing, and automobile trips to show that he was not, in fact, totally disabled. The record reveals that, although plaintiff did engage in these activities, his participation was extremely limited by his condition and was subject to frequent interruptions for rest. We cannot agree with defendant that plaintiff's activities, either recreational or work, were so strenuous that they were conclusive proof, requiring the trial court to find no permanent total disability. They were facts to be considered by the trier of fact along with all other facts and circumstances in the case.

The trial court had the benefit of observing the plaintiff and weighing his testimony, and of evaluating all the evidence, medical and lay, consistent and inconsistent, with his claim. It is particularly within the province of the trial court to decide upon the relative credibility of the parties and their witnesses. *Liming v. Teel*, 46 Wn.2d 762, 284 P.2d 1110 (1955); *Floyd v. Myers*, 53 Wn.2d 351, 333 P.2d 654 (1959); *Roach v. Roach*, 72 Wn.2d 144, 432 P.2d 579 (1967). There is substantial testimony in the record, if believed, to support the findings of the trial court. Therefore, we shall not disturb them. *Fallin v. Fallin*, 54 Wn.2d 370, 340 P.2d 791 (1959).

Neither do we agree that plaintiff's good-faith attempts to be productive and return to work should bar his recovery under the policy. It is true the plaintiff was on the payroll at the Elma postoffice from March 24, 1964 to July 17, 1964, but there was evidence showing that plaintiff's performance was substantially different from his usual work. He had to rest often; many times he went home early; he was forced to ask others to do all heavy lifting for him. The same factors forced him to discontinue his work at the hardware store. "Total disability" does not mean that the insured must be utterly helpless or that he is able only

to perform mild, sedentary activities. Nor should a man be penalized for attempting to work. The trial court could have found the plaintiff's efforts to work were made because of his unwillingness to live a life of idleness, even though permanently and totally disabled. Each attempt at employment soon proved this to be the fact. *Blaustein v. Connecticut General Life Ins. Co.,* 207 F. Supp. 223 (D.D.C. 1962); *Berry v. United States,* 312 U. S. 450, 85 L. Ed. 945, 61 Sup. Ct. 637 (1941); *Shockley v. Travelers Ins. Co., supra; Storwick v. Reliance Life Ins. Co., supra; Wolf v. Mutual Benefit Health & Accident Ass'n,* 188 Kan. 694, 366 P.2d 219 (1961).

■ We find defendant's assignments of error directed toward the admissibility of plaintiff's disability retirement pension without merit. The trial court allowed the evidence to be admitted to show plaintiff's "financial motivation." The evidence established that a normal retirement by plaintiff, after an additional 10 years of service, would have resulted in more than a 2-fold increase in benefits. Defendant urges that such evidence was irrelevant. We disagree. Although the persuasiveness of the evidence may have been weak, the relevancy of the testimony was a determination within the discretion of the trial court. *Owens v. Anderson,* 58 Wn.2d 448, 364 P.2d 14 (1961). All facts which support a reasonable inference on a contested matter and any circumstance whereby an alleged fact may be proved or disproved are relevant. *Chase v. Beard,* 55 Wn.2d 58, 346 P.2d 315 (1959). Any circumstance is relevant which reasonably tends to establish the theory of a party or to qualify or disprove the testimony of his adversary. *Bloomquist v. Buffelen Mfg. Co.,* 47 Wn.2d 828, 289 P.2d 1041 (1955).

The judgment is affirmed.

FINLEY, C. J., and HUNTER, J., concur.

NEILL, J. (concurring in the result)—Although my reading of the record herein leads me to the conclusion that the plaintiff is not permanently and totally disabled within the meaning of the insurance contract, I concur in the result of

the majority opinion because of the familiar rule of *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959). Also, *Sigman v. Stevens-Norton, Inc.*, 70 Wn.2d 915, 425 P.2d 891 (1967); *Jacobs v. Brock, ante* P. 234, 437 P.2d 920 (1968). There is evidence given by plaintiff's local physician, which is substantial, and which can sustain the findings of the trial court. However, I feel required to comment upon the gross inconsistency of plaintiff's sworn statements at trial as compared to his sworn statements to the Department of Employment Security by which he applied for and received unemployment compensation benefits. The state's employer-financed system of unemployment compensation is designed to give financial aid to the labor force during periods of unemployment and is not a scheme of disability benefits. RCW 50.20.010 establishes the eligibility conditions for receipt of unemployment benefits among which is the requirement that the applicant "is able to work, and is available for work . . . . To be available for work an individual must be ready, able, and willing, immediately to accept any suitable work . . . ."

The fact that friends of plaintiff urged him to apply for unemployment compensation avails him nothing. There was no vice in making application. However, statements made by plaintiff in such application must, of necessity due to statutory eligibility requirements, have been either untrue or plaintiff was, during 1965, ready and able to work. Defendant asks us to consider this inconsistency as an estoppel to prevent plaintiff's claim herein. However, it is apparent that essential elements of an estoppel are lacking. See *Bordeaux v. Ingersoll Rand Co.*, 71 Wn.2d 392, 429 P.2d 207 (1967). The most that can be said of plaintiff's dual position is that it is inconsistent—an evidentiary matter which I assume the trial court duly weighed.

Perhaps proper officials of the Employment Security Department will consider such action as may be available and proper to recover unemployment benefits paid to plaintiff. Our holding herein should certainly operate most strongly against plaintiff's contending for any right to retain the

money obtained from the state fund. *Cf.*, *Sagmeister v. Continental Cas. Co.*, 141 Wash. 153, 251 Pac. 124 (1926).

It is apparent that the trial court had somewhat the same feeling, for in his findings of fact he found "that this fraud does not destroy that preponderance. The Court finds that it is more probable that the plaintiff perpetrated a fraud upon the Unemployment Compensation Division than that he is attempting to defraud the defendant."

HILL, J.—I am in accord with Judge Neill's concurring opinion.