[No. 43104.   En Banc.   December 12, 1974.]

THE STATE OF WASHINGTON, *Respondent*, v. LESLIE EUGENE HYNDS *et al.*, *Appellants.*

*James S. Scott* and *Smith, Scott & Hanson,* for appellants.

*Joseph Panattoni,* for respondent.

HAMILTON, J.—Leslie Eugene Hynds and Raymond Lee Whittle were charged and convicted of a criminal violation of The Securities Act of Washington and of grand larceny. They appeal. We affirm.

The three principal issues in the case are whether the trial court erred in: (1) admitting evidence of an over-the-counter dealer as to the going price of the stock allegedly fraudulently sold to the complaining witness; (2) instructing the jury on the elements of a criminal violation of The Securities Act of Washington; and (3) not requiring the State to elect alternatively whether to charge a violation of The Securities Act of Washington or the grand larceny statute.

We state the facts briefly. Defendant (appellant) Hynds had formerly been employed by Idaho Investment Corporation to sell stock for the purpose of raising its initial capital in 1964-65. After leaving that employment, he bought and sold stock for his own account along with other sales activities. He testified he purchased one block of Idaho Investment Corporation stock from an individual at 25 cents per share and another block at $1.85 a share. Defendant (appellant) Whittle was an acquaintance of Hynds and likewise had sales experience. In 1972, Hynds, with the aid of Whittle, sold 100 shares of his Idaho Investment Corporation stock to a retired couple, the Turners. The sale price was $7 per share, and Hynds and Whittle equally divided the net profit on the sale.

Disputed testimony in the case was offered from which the jury could have found that the defendants, utilizing persistent sales tactics, made a number of false representations about the stock they were seeking to sell to the Turners. These were: (1) the Idaho Investment Corporation was about to merge with Sierra Life Insurance Corporation and that the new corporation would be the largest in Idaho,

except for Boise-Cascade Corporation; (2) the stock defendants had for sale belonged to the president of the company who had to sell $10,000 worth of the stock in order to effectuate the merger pursuant to governmental regulations; (3) defendants were authorized to sell the corporate president's stock in $2,500 lots at $7 per share; however, the Turners were being offered a special opportunity to buy 100 shares at $7 a share; (4) after the Turners purchased the stock at the quoted price, they could call additional shares at the same price every 6 months for a period of 2 years, which constituted a bargain because the price of the stock would be increasing to $12 to $14 a share following the merger; and (5) after the merger, the company would be listed on the New York Stock Exchange like Standard Oil Company.

There was testimony at the trial from which the jury could have found that each of the preceding representations was false and made with the requisite criminal knowledge and intent.

In undertaking to establish that the defendants intentionally made false representations concerning the value of the stock at the time of the sale, the State introduced the testimony of Mr. Fred Frazier, founder and president of the Idaho Investment Corporation, and Mr. Alex Sinclair, president of a stockbrokerage firm located in Twin Falls, Idaho.

In essence, Mr. Frazier testified that, as president of and a stockholder in the corporation, he was interested in the value of the stock, that there was a market for the stock in 1972, albeit the market was confined to one stockbrokerage firm in Twin Falls, and that he followed the broker's quotations of its value as published in the Twin Falls newspaper. Over objection he was permitted to state that in 1972 the stock was quoted at between 18 and 25 cents per share, and that after merger with another corporation (Greater Idaho Corporation) in late 1972 the value remained substantially the same.

Mr. Sinclair, in turn, testified that his brokerage firm

acted in the capacity of a market maker for the corporate stock during 1972 and that the firm's published bid and ask prices of 12½ and 17½ cents per share, respectively, prevailed. He further testified in detail as to numerous transactions wherein the firm, as principal, had bought and sold thousands of shares of the stock in 1972 for which the firm paid from 12½ to 20 cents a share and sold for between 17 and 25 cents per share.

Defendant Hynds testified at the trial. Defendant Whittle did not. In pertinent substance, Hynds testified that sometime prior to the stock transaction here involved, Whittle had been in communication with Mr. Frazier concerning prospects of a future merger of Idaho Investment Corporation with another corporation. He stated that the two of them discussed the information Whittle had acquired on the weekend preceding the Turner sale. He further asserted that, after the sale was consummated, he deducted the "cost" of the stock to him, calculated at approximately 20 cents per share, and split the remainder of the $700 sale price with Whittle, despite his earlier claim that he had paid from 25 cents to $1.85 per share for the stock.

Defendants' initial claim of error on appeal runs primarily to the testimony of Mr. Sinclair. They contend that Mr. Sinclair's brokerage firm does not qualify as a "bona fide independent market maker" under the rules and regulations of the Securities and Exchange Commission, thus constituting the firm's noncompetitive pricing and trading of Idaho Investment Corporation stock a deceptive and misleading market making practice under the Securities Exchange Act of 1934 (15 U.S.C. § 78o). For this reason, they argue, Mr. Sinclair's testimony relating to the firm's transactions and price quotations represents an unreliable indicator of the true market value of the stock involved and is otherwise irrelevant. We find no merit in this claim of error.

■ While it is true that at the time in question there was no established market for Idaho Investment Corporation stock created by widespread competitive bidding, nev-

ertheless, this court has recognized and resolved the problem of stock valuation in these circumstances. In *In re West Waterway Lumber Co.,* 59 Wn.2d 310, 316, 367 P.2d 807 (1962), we observed:

We cannot see how the absence of an established market price for shares of the Douglas Fir Export Company can detract from the value of the shares, whatever it may be. If a market price were available, it no doubt would have some influence on the process of valuation; the absence of a market price simply means that the court has fewer guides or standards to provide assistance in determining the value of corporate shares.

■ Thus, where, as here, a traditional competitive market and market price has not been established, other probative evidence of value may be resorted to and relied upon. In addition to the prices quoted by Mr. Sinclair and alluded to by Mr. Frazier, Mr. Frazier testified from personal knowledge as to the "book value" of the stock (28 cents per share), and defendant Hynds, as noted, testified that the "cost" of the stock sold to the Turners was 20 cents per share. The fact of Mr. Sinclair's method and motive in seeking to create a market in Idaho Investment Corporation stock was placed before the jury and affects only the weight, not the admissibility of his testimony. The value of this stock in 1972 necessarily had to be shown by the means available, with the jury weighing credibility in reaching its conclusion as to the stock's worth.

Tangentially, defendants contend that the evidence adduced as to the stock's value cannot be considered as evidence going to the issue of the requisite criminal intent, because there was no specific evidence that defendants were aware or knew of the price quotations in Twin Falls. We disagree.

■ Specific intent to defraud may be shown by circumstantial evidence, *Ladley v. Saint Paul Fire & Marine Ins. Co.,* 73 Wn.2d 928, 934, 442 P.2d 983 (1968), and in the absence of direct evidence or an admission of a specific intent to defraud, which would be tantamount to a plea of

guilty, circumstantial evidence must be resorted to. In showing such intent circumstantially, a significant disparity between actual value and the selling price of the stock to the Turners is one link in the chain of circumstances which can be considered. A 3,500 percent differential between actual value and selling price, coupled with other false representations, does provide support for an inference of intent to defraud, and the price quotations in issue would thus be properly relevant. Furthermore, Hynds' testimony regarding Whittle's communication with Mr. Frazier concerning the status of Idaho Investment Corporation, their discussion of the information received preceding the Turner sale, and his (Hynds') evaluation of his "cost" at 20 cents per share in dividing the profit with Whittle certainly give rise to a permissible inference that the defendants were then fully aware of the quoted value of the stock in the Twin Falls market.

Other circumstances bearing on the issue of intent as revealed by the evidence include: (1) the persistence with which the defendants pursued the Turner sale; (2) immediate cashing of the Turners' check and division of the proceeds; (3) failure to deliver the stock to the Turners; (4) a subsequent sale of 50 shares of stock to another elderly retiree at $4 per share, with the reason attributed for the reduced price being the difference in age between purchasers; and (5) an offer by Hynds, after he was charged in the instant case, to the Turners of 10 times as many shares of stock for their $700 if they would withdraw their complaint.

All factors being considered, we are satisfied that the evidence relating to the Twin Falls "market" was relevant and that the circumstances presented were sufficient to support a jury finding of the requisite knowledge and specific intent to defraud.

Turning to the second issue, we find no error in instructing the jury. Defendants correctly point out that a

violation of RCW 21.20.010[1] without a violation of RCW 21.20.400[2] as well does not necessarily constitute a crime. A violation must be "wilfull" before criminal penalties attach.

Federal decisions have emphasized this distinction between civil and criminal violations and have held that, in a securities fraud case, knowledge of the falsity of the representations and specific intent to defraud must be proven. *Walters v. United States*, 256 F.2d 840, 842-43 (9th Cir. 1958); *Kistner v. United States*, 332 F.2d 978 (8th Cir. 1964); *Windsor v. United States*, 384 F.2d 535, 536-37 (9th Cir. 1967).

Instruction No. 10 required the jury to find defendants willfully, unlawfully and feloniously violated the provisions of RCW 21.20.010. Instruction No. 5 defined willfully, unlawfully and feloniously to mean "intentionally and purposely, but not accidentally, and without and beyond the authority of the law." Instruction No. 12 directed the jury that if either defendant "intentionally made an untrue statement of a material fact concerning the Idaho Investment Company stock" they were to find the defendants

---

[1]"It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly:

"(1) To employ any device, scheme, or artifice to defraud;

"(2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or

"(3) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person." RCW 21.20.010.

[2]"Any person who wilfully violates any provision of this chapter except RCW 21.20.350, or who wilfully violates any rule or order under this chapter, or who wilfully violates RCW 21.20.350 knowing the statement made to be false or misleading in any material respect, shall upon conviction be fined not more than five thousand dollars or imprisoned not more than ten years, or both; but no person may be imprisoned for the violation of any rule or order if he proves that he had no knowledge of the rule or order. No indictment or information may be returned under this chapter more than five years after the alleged violation." RCW 21.20.400.

guilty of count 1 of the information. Instruction No. 14 told the jury that promises or predictions of future events were fraudulent if the defendant "believed in his own mind that they would not materialize, or if they were made recklessly without knowledge of the facts and with intent to deceive . . ."

These instructions do not use the precise language of the federal decisions; however, they tell the jury that the violation of the securities act must be willful, that the untrue statements must be intentionally made, and that the defendant had to know in his own mind that his untrue statements would not occur, or that the statements were made recklessly without knowledge of the facts and with intent to deceive.

■ The instructions do not leave the impression that mere suspicious circumstances, use of high pressure tactics or the fact that the defendants might have known the facts indicating the falsity of the representation would be sufficient circumstantial evidence to warrant a conviction. They do not say that the mere violation of RCW 21.20.010 was sufficient to constitute a criminal violation. Although defendants' requested instruction explained the necessity for proof of a willful violation of RCW 21.20.010 in a single instruction to the jury, the instructions given, nevertheless, accomplish the same objective and do permit the defendants to argue their theory of the case. Accordingly, the failure to give defendants' requested instruction was not error. *State v. Passafero,* 79 Wn.2d 495, 487 P.2d 774 (1971); *State v. Birdwell,* 6 Wn. App. 284, 492 P.2d 249 (1972).

■ Finally, defendants' motion to require the prosecution to elect between the two counts charged on the ground that proof submitted for both counts was identical is not well taken. It is not necessary to take money to violate The Securities Act of Washington. This, on the other hand, is an element of the charge of grand larceny. *State v. Smith,* 31

Wash. 245, 71 P. 767 (1903); *State v. Easton,* 69 Wn.2d 965, 422 P.2d 7 (1966); RCW 9.54.090.

The verdict and judgment are affirmed.

HALE, C.J., and FINLEY, HUNTER, and WRIGHT, JJ., concur.

UTTER, J. (dissenting)—I dissent. The cases cited by the majority to support its conclusions deal with civil rather than criminal issues and do not discuss the question of specific intent prerequisite to criminal liability. The State assumed the burden of establishing the defendants' specific intent to defraud by the language of the information. The issue, therefore, is not whether there were misstatements of material facts as required by RCW 21.20.010, but whether the defendants "wilfully" made misstatements of material facts as required by RCW 21.20.400. The proof of a market value unknown to the defendants may be relevant to the issue of whether they made misstatements of a material fact. This, however, was not the offense charged. The charge was that they intentionally misstated the value of the stock.

Intent may be shown by circumstantial evidence. *Ladley v. Saint Paul Fire & Marine Ins. Co.,* 73 Wn.2d 928, 934, 442 P.2d 983 (1968). It is still necessary, however, that the evidence, to be relevant, must show by reasonable inference that the defendants had personal knowledge of the values quoted in the Twin Falls paper. *State v. Brache,* 63 Wash. 396, 115 P. 853 (1911); *Keisel v. Bredick,* 192 Wash. 665, 74 P.2d 473 (1937); *State v. Wilson,* 38 Wn.2d 593, 231 P.2d 288 (1951); *Chase v. Beard,* 55 Wn.2d 58, 346 P.2d 315 (1959). The evidence regarding value as reflected in the quotes of Mr. Alex Sinclair, a Twin Falls broker, was not relevant to the crime charged and was improperly admitted. This evidence failed to show, even inferentially, that the defendants had the requisite personal knowledge of these quotes. There is other evidence in the record which would support the additional factual allegations sustaining the charges against the defendants. But the record does not

conclusively show the defendants would have been convicted without the testimony of Mr. Sinclair. Portions of the testimony of Mr. Frazier, the owner of the company, raise at least a jury question about the accuracy of other testimony regarding the value of the stock at the time of the alleged criminal offense. On cross-examination, Mr. Frazier testified as follows: "Q. In your opinion, Mr. Frazier, was the stock quoted by him [Sinclair] being underpriced? A. Well, yes sir, in my opinion, but so is most all the other stock in the nation today. Q. In particular, with your knowledge about the prospects of the company and the plans and objectives, would you have sold your personal stock at [the prices quoted by Sinclair] had you been able to? A. No sir." Mr. Frazier also testified that he "couldn't say that I knew what the fair market trading price of that stock should be at any time [during the year the sale took place]."

The judgment should, therefore, be reversed as to both defendants and remanded for new trial inasmuch as this court cannot say beyond a reasonable doubt the error was harmless. *Chapman v. California*, 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R. 3d 1065 (1967); *State v. Britton*, 27 Wn.2d 336, 178 P.2d 341 (1947); *State v. Mack*, 80 Wn.2d 19, 21-22, 490 P.2d 1303 (1971).

ROSELLINI, STAFFORD, and BRACHTENBACH, JJ., concur with UTTER, J.

Petition for rehearing denied January 13, 1975.